## Maggard v. Commonwealth.

(Decided January 9, 1917.)

### Appeal from Leslie Circuit Court.

1. Criminal Law—Prisoner Forcibly Effecting Escape—Contempt.— For one arrested by and in custody of an officer to be guilty under section 1338 of the Kentucky Statutes of forcibly effecting his escape, he must have committed such acts as would amount to opposition or resistance of the officer having him in charge, either

by committing violence upon the officer, or jerking away and fleeing from the officer, or making flight in opposition to the commands of the officer; but the offense is not committed if the person in charge and who escaped did so while temporarily out of sight of the officer or away from him, and in violation of confidence imposed in him by the officer.

2. Criminal Law—Prisoner Effecting Escape—Contempt.—Where the officer permitted his prisoner to go into a house, out of his sight, and the former, instead of returning, walked through the house and quietly made his escape without the use of any force or violence, and was not pursued by the officer, the offense denounced by section 1338 of the Kentucky Statutes of forcibly effecting his escape from an officer is not committed.

H. C. EVERSOLE and J. M. BAKER for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Floyd Maggard, was indicted, tried and convicted in the Leslie Circuit Court for the offense of forcibly escaping from the custody of an officer while under arrest for shooting at random on the public highway, the offense being one of those denounced by section 1338 of the Kentucky Statutes. His punishment was fixed by the verdict of the jury, upon which judgment was rendered at confinement in the county jail for six months, and his motion for a new trial having been overruled, he prosecutes this appeal.

Several grounds are relied upon for a reversal, but under the view which we take of the case we do not deem it necessary to consider any of them but the one complaining of the refusal of the court to direct the jury to find the defendant not guilty.

After the appellant, to whom we shall refer as defendant, had been apprehended by the deputy sheriff who arrested him, the officer started with him to the nearest justice of the peace, and on the way they stopped at the home of a citizen, and while in his yard, in the language of the deputy sheriff testifying in behalf of the Commonwealth, "Maggard stepped into the house while witness waited in the yard; that he did not see any more of him, and on inquiry learned that he was gone." He further testified that he did not pursue the defendant, Maggard, or make any attempt to rearrest or obtain possession of him as a prisoner.

The testimony given by the defendant is almost literally the same as that testified to by the officer, with the additional testimony that the defendant asked persons in the house to notify the officer that he, the defendant, had gone to his home, and that he saw no more of the deputy sheriff, nor did he hear any further of the charge upon which he was arrested, or of the alleged charge of escaping from the officer, until after the indictment was found against him.

The statute, *supra*, under which the indictment was found, is:

"If a prisoner confined on a sentence of imprisonment, or to be whipped, or under a capias, escapes jail, or if a person lawfully arrested upon a charge for a violation of the criminal or penal laws forcibly or by bribery effects his escape from the officer or guard, he shall be confined in jail not less than six nor more than twelve months."

From it we see that there are two classes of escapes by prisoners dealt with; one is the escape of the prisoner from the place of his lawful confinement, which means incarceration, and the other is the escaping of a prisoner while under arrest by an officer for the violation of some criminal or penal law. The offense, under the first classification, is complete, and the offender commits it by merely escaping, while in the latter class, in order for the offense to be committed, the escaping of the offender from the custody of the officer must be done either *forcibly* or by bribery. Manifestly it is the latter offense, if any, which the defendant committed, and if committed at all it was done forcibly, as there is no pretense that it was committed by bribery. So, the question is, does the testimony show that the escape with which the defendant is charged was forcibly effected?

It is perfectly clear that the legislature in enacting the section creating the offense intended to give some force and effect to the word *forcibly,* for, if not, it would not have been made essential to the commission of one form of escape denounced by the section and not the other. In other words, it is manifest that the escape of a prisoner from an officer who had just arrested him under some criminal charge, in order to be criminal must have been effected or made in a different way from the escape of a prisoner confined under

sentence of law, and this difference is that the former character of escape must be either forcibly or by bribery, while no such essentials are necessary for the commission of the latter character of escape. It is evident that the legislative purpose was not to punish the defendant for making his escape, but to punish the acts by and through which it was effected, and which constitutes the force with which it was effected, as hereinafter defined, while in the other class of escape mentioned in the section, the punishment is directed at the mere act of escaping, whether by force or otherwise.

It then becomes necessary to ascertain what the legislature meant by the use of the term *forcibly* in the statute under consideration. Manifestly, the purpose of the legislature in requiring the escape of the person arrested to be *forcibly* made in order for the offense to be committed was to punish the person arrested for such conduct as would constitute an assault upon the officer, which would necessarily be the exercise of force, and the further purpose to deter him from committing such acts as would justify the officer in doing violence to him in order to prevent his escape or to effect his recapture. Therefore, whatever conduct on behalf of the prisoner which would be calculated to produce either of these consequences would necessarily come within the meaning of the word "forcibly" as used in the statute. As a corollary of this, conduct on his part not calculated to produce either of such consequences would not be forcible.

The statute should be given a liberal construction, and the word being considered should not be given a narrow or contracted meaning so as to confine its application to strictly physical force, but it should be defined so as to include all actions and conduct of the prisoner which are directed against or in opposition to any character of resistance which the officer may lawfully exercise in an effort to prevent the escape. This would include fleeing of the prisoner from the officer over the latter's protest and in defiance of his commands, although no physical force other than that which might be used while fleeing from the officer was exercised by the prisoner. But with this liberal definition, we are unable to find wherein the conduct of the defendant constituted a *forcibly* committed escape. He went out of the presence of the officer into the house, from

which he departed for his home, with the consent of the officer. It is not even shown that he promised the officer that he would return and place himself in the latter's custody. At most it was but a breach of confidence which the officer reposed in him. The facts furnish none of the reasons which, as we have seen, no doubt prompted the legislature in creating the offense.

To hold in this case that the defendant forcibly effected his escape would render the use of the word *forcibly*, as used in the statute, nugatory, and would place the character of escape with which the defendant is charged on a par with the other character of escape made by an incarcerated prisoner, as denounced in the first part of the section under consideration.

The conduct of the defendant, if he intended to effect a permanent escape at all, was but the practicing of a clever ruse, cunningly devised and clandestinely executed, and which evidenced a desire to avoid force rather than to employ it. It showed the antithesis of force.

We, therefore, conclude that the court erred in refusing to instruct the jury to find the defendant not guilty, and the judgment is reversed with directions to proceed in accordance with this opinion.