## Miller and Gabbard v. Commonwealth.

(Decided October 5, 1926.)

## Appeal from Breathitt Circuit Court.

1.  Homicide—In Prosecution of Officers for Murder Committed During Attempted Arrest, Instruction Predicated on Distinction Between Misdemeanors and Felonies Held Improper, in View of Statute (Ky. Stats., Section 1148a-7).—In prosecution of officers and others for murder committed in course of attempted arrest of drunken and disorderly person, instruction as to defendants' right to arrest deceased, predicated on distinction between misdemeanors and felonies, held improper; instruction as to right to arrest for offense defined by Ky. Stats., section 1148a-7, being such as should have been given.

2.  Homicide—Instruction Authorizing Conviction of All Defendants, if One of Them Killed Deceased, Without Requiring Finding that Others Aided and Abetted, Held Prejudicial.—In prosecution of officers and others for murder committed during attempted arrest, instruction on murder and manslaughter, which inadvertently authorized conviction of all defendants if one of them shot and killed deceased, without any requirement that they must have aided and abetted, held prejudicial.

E. C. HYDEN, W. L. KASH, and T. T. COPE for appellants.

FRANK E. DAUGHERTY, Attorney General, and A. F. BYRD for appellee.

OPINION OF THE COURT BY JUDGE CLAY.—Reversing.

John Miller, chief of police of the town of Jackson, and Matt Gabbard, a deputy marshal, who were jointly indicted with James Deaton and Harlan Hagins for the murder of Henry Howard, were convicted of manslaugh-

ter and their punishment fixed at two years' imprisonment in the state reformatory. They appeal.

There was evidence that shortly before the homicide Howard went to the store of William Day in Jackson and procured a 38 special pistol. Leaving there he went into the country and procured and drank some whiskev. On his return he went into a restaurant and said, "The shooting will begin in fifteen minutes." Later on he went into another restaurant and said, "The shooting will begin in two minutes." Another witness testified that he announced that he intended to take the town. He then went out into the street, fired his pistol into the ground in the presence of several citizens and said, "God damn them, let them come and get me." He then proceeded up College avenue to Court street and past the police court. When he reached the point on Main street in front of the courthouse he stopped and danced. While there he was seen by appellant Miller, whose car was standing in front of the police court. By this time Howard's conduct had created such commotion that he was being followed by a crowd of boys and men. When Miller reached the police court he was directed by the police judge to go and arrest the man who was creating the disturbance. At the same time he heard the rumor that Howard had shot a boy. Thereupon Miller got in his car, started after Howard, and intercepted him near the intersection of a short street and Main street. He then hailed Howard, who came towards the car. When he told Howard that he would have to arrest him Howard drew his pistol and presented it at him. Miller then drew his pistol, and, after the two had dodged about, Howard backed away. When he reached the curb he stumbled and fell. There is a dispute in the evidence as to who fired first, some of the witnesses saying that Howard fired first, some that Miller fired first, some that the shots were almost simultaneous, and others that Howard did not fire until he reached the Holliday porch. In the meantime Gabbard had come to Miller's assistance and was endeavoring to effect Howard's arrest. After Howard arose he went to the Holliday porch. While there some shots were fired by Gabbard and Miller and the fire was returned by Howard. Howard then ran to the lower side of the Holliday residence, where he was intercepted by James Deaton. As he came out from behind the residence he fired again at the officers, and they returned the fire. The last shot

which, it is claimed, was fired by Miller, struck Howard and resulted in his death.

In addition to instructions on murder, manslaughter, aiding and abetting and self-defense or defense of another, the court gave the following instruction:

"The court instructs the jury that if they believe from the evidence that the deceased, Henry Howard, was drunk or disorderly, in the city of Jackson, Kentucky, in the presence of the defendants, John Miller or Matt Gabbard, who were then marshal and deputy marshal of the town of Jackson, or the defendant, James Deaton, who was deputy sheriff of Breathitt county, Kentucky, then the defendants or either of them had the right to arrest the said Henry Howard, with or without a warrant, and hold him in custody until the presence of the police judge or some other court could be secured to make some disposition of the case, and if they further believe from the evidence that after the arrest of the deceased, Henry Howard, he, the said Henry Howard, while in the custody of the defendants, or either of them, attempted by force or violence, or either, to effect his release from the defendants' custody as officers, the defendants had the right to use such force as was necessary or reasonably appeared to them to be necessary, but no more, to overcome the forcible resistance of deceased, or if the jury shall believe from the evidence that the said Howard committed a felony in the presence of the defendants, John Miller and Matt Gabbard, or either of them, by shooting at them or either of them, at a time when they had not first shot at him, then it was the duty of the defendants, Miller and Gabbard, to arrest the said Howard, either with or without a warrant, and in making said arrest it was the duty of said Howard to peaceably submit to said arrest, and the defendants, Gabbard and Miller, had the right to use such force in making said arrest as was reasonably necessary, even to the taking of his life, and if under these circumstances the defendant, John Miller, shot and killed the deceased, Henry Howard, the killing was excusable if the defendants could not otherwise overcome his forcible resistance, or what appeared to them at the time in the exercise of a reasonable judgment."

The instruction on murder and manslaughter was prejudicial to appellant Gabbard, for by inadvertence it authorized the conviction of all the defendants if the jury believed that appellant Miller shot and killed the deceased under the circumstances therein set forth. Manifestly, if Miller alone did the killing, the other defendants could not be convicted unless they aided and abetted Miler, a question which was submitted by another instruction.

It will be observed that the first part of the instruction set out above is predicated on the assumption that Howard was actually placed under arrest, and proceeds to define the rights of appellants if thereafter he attempted by force or violence to effect his release from their custody. As a matter of fact, there was no evidence that Howard was actually arrested, and for that reason that portion of the instruction referred to does not fit the facts, or properly present appellants' defense, and must therefore be regarded as erroneous.

On the whole we conclude that the facts of this case bring it within section 1148a-7, Kentucky Statutes, which makes it a felony for any one "by violence, force or threats to alarm, disturb or hinder, or obstruct or intimidate any officer of the Commonwealth of Kentucky in the matter of his official action, or in the discharge of his duty; or attempt so to do;" and that an instruction under the statute rather than one distinguishing misdemeanors from felonies, so far as the rights and duties of officers are concerned, would more properly present the defense of the accused. Therefore, on another trial the court will give the following instruction in lieu of the one set out above.

"If you believe from the evidence that the deceased, Henry Howard, was drunk or disorderly in the presence of the defendants, John Miller and Matt Gabbard, or either of them, then the defendants, as officers of the law, or either of them, had the right, and it was their duty, to arrest the said Howard, and if you further believe from the evidence that the defendant Miller notified said Howard of his purpose to arrest him, and that the said Howard then alarmed, disturbed, hindered, obstructed or intimidated said Miller in the discharge of his duty, or attempted so to do by drawing his pistol on Miller, then Howard was guilty of a felony and the defend-

ants, or either of them, had the right to arrest him and to use such force as was reasonably necessary for that purpose, even to the extent of killing said Howard, and if you believe from the evidence that under these circumstances the defendants, or either of them, shot and killed the deceased, Howard, the killing was excusable and you will acquit the defendants.''

Judgment reversed and cause remanded for a new trial not inconsistent with this opinion.