## Mullins v. Commonwealth.

(Decided March 18, 1927.)

## Appeal from Knott Circuit Court.

1. Homicide.—In prosecution of peace officer for murder when attempting to make arrest, defendant is entitled to instruction under Ky. Stats., section 1148a-7, as to his rights and duties as an officer thereunder.

2. Homicide.—Evidence, in prosecution of peace officer for murder at time of atempt to make arrest, held sufficient to authorize submission of case to jury.

B. M. JAMES for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Thomas Mullins, a deputy sheriff of Knott county, was indicted for the murder of Forester Bentley and was convicted of manslaughter, his punishment being fixed at confinement in the state penitentiary for a period of ten years. He appeals.

Bentley and a number of others were indicted at the November term, 1924, of the Knott circuit court, charged with operating a moonshine still, and the warrants for their arrest were delivered to appellant. After the indictment had been returned Bentley left his home, but on the day of the killing, which was on December 24, 1924, appellant was informed that he had returned. Appellant lives on Carr's fork, about three miles above the mouth of Nealy's branch. He left his home and went to the mouth of Nealy's branch, where he was informed that Bentley and Anthony Hall had gone up Nealy's branch. Appellant requested Creed Amburgey to assist him in arresting Bentley, but Amburgey refused. He then asked Amburgey to go to the home of Millard Seals, a constable, who lived in the neighborhood, and request him to come and assist appellant in making the arrest, but Seals also refused to assist him. Bentley and Anthony Hall later returned down Nealy's branch and appellant intercepted them and informed the deceased that he had a warrant for his arrest, but the deceased and Hall continued to walk down the branch. They passed through a school lot and behind the school build-

ing and, while behind the building and out of sight of appellant, the deceased drew his gun and had it in his hand when appellant again appeared in sight. According to Hall and one other witness for the commonwealth, appellaint overtook the deceased and took hold of him by the arm and started to lead him toward the road, and after walking a short distance, appellant turned and struck deceased in the face with appellant's gun and then shot him. Appellant testified on the trial that he informed the deceased that he had a warrant for his arrest and that he made a number of requests that he submit to arrest; that he took hold of deceased's left arm, that deceased jerked loose, cocked his pistol and started to draw it on the appellant when appellant knocked it down with his left hand and fired the fatal shot. Being asked if he told the deceased to consider himself under arrest appellant answered as follows:

"Yes, sir, and he went right on and I cut him off just before he got to the log and I got him by this arm, caught him by the coat sleeve, and he jerked loose and shoved me back, put his left hand against me and shoved me, and says, 'God damn you, I said stand back, don't come no further, I don't aim to be fooled with you; I have been arrested on this and don't aim to fool with you nary bit; you go on back;' and he started to walk on, and I told him to hold up not to go no further. I says 'you are going to give up, come on and give up, we will go and give bond,' and he wheeled, and as he wheeled he cocked his pistol and I knocked the pistol down that way and shot him; I knocked the pistol down with my left hand."

Appellant complains of instruction No. 1 given by the trial court, which, so far as it defines his rights and duties, is as follows:

"The court tells the jury that Thomas Mullins, the defendant herein, was a peace officer, and he not only had the right, but it was his duty, to make arrests with or without a warrant—to make an arrest with a warrant for offenses committed out of his presence, to make arrests without a warrant for offenses committed in his presence. It was his duty in attempting to make an arrest to inform the person about to be arrested of the nature of the offense and

charge against him and show to and read the warrant, if demanded. It was the duty of the deceased Bentley to quietly and peaceably submit to an arrest, and if he failed to quietly and peaceably submit to an arrest the defendant had the right to use such force or means as was necessary or reasonably appeared to him to be necessary to perfect the arrest and take the deceased to jail."

This instruction is similar to the one condemned in Miller and Gabbard v. Commonwealth, 215 Ky. 819, 287 S. W. 6.

Section 1148a-7, Kentucky Statutes, makes it a felony for any one, "by violence, force or threats, to alarm, disturb or hinder or obstruct or intimidate any officer of the commonwealth of Kentucky, in the matter of his official action, or in the discharge of his duty, or attempt so to do," and, under the facts, appellant was entitled to an instruction under this statute as to his rights and duties as an officer. On another trial the court, in lieu of instruction No. 1, will give the usual instruction on murder, and in addition thereto an instruction under section 1148a-7, Kentucky Statutes, as directed in Bentley v. Commonwealth, 216 Ky. 665, 288 S. W. 295; Gipson v. Commonwealth, 215 Ky. 710, 286 S. W. 1069; and Miller and Gabbard v. Commonwealth, 215 Ky. 819, 287 S. W. 6.

The appellant also insists that his motion for a directed verdict should have been sustained, but the evidence for the commonwealth was sufficient to authorize a submission of the case to the jury.

Judgment reversed and cause remanded for a new trial consistent herewith.