## Neal v. Commonwealth.

(Decided June 4, 1929.)

COLDIRON & HARRIS and A. N. CISCO for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

C. W. Neal was a deputy constable in Boyd county. He was indicted for the murder of Millard Walker. On the trial of the case he was found guilty of manslaughter and his punishment fixed at 21 years' imprisonment. He appeals.

The facts shown by the commonwealth on the trial are these: James Walker lived on a road leading up Catlett's creek. Neal lived about a hundred feet from Walker, and James Triplett lived about a hundred feet from Neal; the three houses fronting on the road. On Saturday evening Millard Walker, who was temporarily staying with his father, James Walker, came down to James Triplett's and was disorderly, and a warrant for his arrest for a breach of the peace was issued by a magistrate and was placed in Neal's hands for execution on that day. On Monday morning, after breakfast, Walker left his father's house and was walking down the road with his head down and a satchel under his right arm; his left arm had been cut off below the elbow and some of the fingers on his right had had been badly mashed. As Walker came down the road, Neal got up off his porch and walked out to his gate. The witnesses did not hear what was said, or heard but little of it. When he was about 30 feet from Walker he drew his pistol and fired, striking Walker in the left side, while Walker was simply walking down the road.

On the other hand, the proof for Neal was this: He was sitting with a friend on the porch, and seeing Walker coming down the road said: "I will just go with Millard and let him give bond." When he got to the county road and opened his gate Walker was just passing the gate. He spoke to him and said "Good morning Millard." Walker answered, "Go to hell you S. B." Neal said, "Wait a minute Millard I have a warrant for you." and walked out into the road. Walker stopped just below the gate and Neal walked out towards him. Walker said: "You'll not take me, you can't arrest me." Neal said: "You are already under arrest." Walker put his hand in his right coat pocket, and when Neal got within two or three feet of him he said, "I will cut your damn head off," and jerked his hand out with his knife open. When he drew the knife on Neal, Neal jumped back and jerked his pistol out and told Walker that he was under arrest.

834

Walker advanced on him with the knife and Neal backed about 30 feet. When they got opposite his garage gate, which was about 30 feet above the other gate, Neal told him to put that knife up. Walker said, "Damn you I will kill you," and made a lick at Neal as if he was going to run under the gun. Neal then fired and Walker fell. Walker died a few days later from the wound.

The testimony of Neal is supported by three other witnesses who heard what was said and saw the shooting. The testimony for the commonwealth was by Walker's wife, his father and mother, who said they saw the shooting from the barn of the father. They testified that Walker fell at Neal's gate and not at the garage gate. They also testified that there was no knife there when he fell. The proof also showed that Walker and his whole family knew that the warrant had been issued for his arrest for the breach of the peace and that it was in Neal's hands for execution. Walker was about 39 years old. Neal was 57. The ball struck Walker in the left arm about two inches below the shoulder. It struck his side about the sixth rib and lodged in the eighth rib on the opposite side. It is earnestly maintained for Neal that the angle at which the ball passed through Walker's body conclusively confirms the testimony for Neal as to how the shooting took place. On the other hand, the commonwealth showed that the ground at Neal's gate was higher than where Walker stood. They were both men of ordinary height. There had been no previous trouble between them.

In defining the rights of the officer in making an arrest, the court told the jury in substance that, if Neal had notified the deceased that he had a warrant for his arrest and offered to read it to him, then it was the duty of the deacesed to submit to arrest, and if they believed from the evidence that Neal at the time of the shooting had notified the deceased Walker that he had a warrant for his arrest and offered to read it to him, and attempted to make the arrest and Walker attempted by violence to resist the arrest, then Neal had the right to use such force as was necessary, or reasonably appeared to be necessary, to overcome the forcible resistance of the deceased, and if he so shot the deceased the jury should find him not guilty. Section 39 of the Criminal Code of Practice provides that an officer "if acting under a warrant of arrest, shall give information thereof, and if required shall show the warrant." The statute does

not require that the officer shall read the warrant to the person arrested, or offer to do so. It will be seen that by the instruction of the court Neal's whole defense was rested upon the question whether he had offered to read the warrant to the deceased, and there was no evidence that he had offered to read the warrant to him. The proof all shows that Walker very well knew that Neal had the warrant. It had been discussed at his father's house before he left there and he made no demand on the officer to show the warrant. In Tuck v. Beliles, 153 Ky. 848, 156 S. W. 883, where, as here, the person arrested resisted arrest when found and did not give the officer any opportunity to show the warrant, it was held that this was immaterial as he very well knew what he was arrested for and knew that he was resisting an officer. To the same effect, see Dale v. Commonwealth, 186 Ky. 510, 217 S. W. 363, and cases cited. A similar instruction was held erroneous in Mullins v. Commonwealth, 219 Ky. 60, 292 S. W. 471, because it did not define the rights of the officer under section 1148a-7, Kentucky Statutes, which makes it a felony by violence to resist an officer. On another trial, in lieu of instruction 6, the court will give the jury this instruction:

"The defendant C. W. Neal was a deputy constable of Boyd county, and as such officer he had in his hands a warrant for the arrest of the deceased Walker, and if he had told the deceased that he had the warrant and would arrest him under it, then it was the duty of the deceased to submit to arrest and not to resist the officer by force; and if the jury believe from the evidence that the defendant Neal just previous to the shooting had told the deceased Walker that he had a warrant for his arrest and would arrest him under it, and while he attempted to arrest Walker the latter by force or violence attempted to resist the arrest, then the deceased committed a felony in the presence of the officer, and the defendant Neal had the right to use such force as was necessary or reasonably appeared to him to be necessary to overcome the forcible resistance of the deceased, but no more, and if he so shot and killed the deceased the killing was excusable and the jury should find the defendant not guilty."

Judgment reversed, and cause remanded for a new trial.