## Anderson v. Commonwealth.

(Decided December 17, 1929.)

W. R. PRAER and H. H. RAMEY for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

The appellant, Frank Anderson, was indicted by the grand jury of Floyd county, charged with murdering George Horn, a policeman in Prestonsburg, and which occurred on May 4, 1929, near 8:30 o'clock p. m. At his trial under that indictment, he was convicted of voluntary manslaughter, and sentenced to confinement in the penitentiary for a term of 21 years, and, from the judgment overruling his motion for a new trial, he prosecutes this appeal. A number of grounds are set out in the motion for a new trial, but some of them are abandoned on this appeal, or, more appropriately speaking, are not argued in brief of appellant's counsel.

The only error that, as we conclude, is meritorious and material, relates to the instructions given by the court and failure to give to the jury the whole law of the case. Other complaints of the trial, if they be error at all, are so immaterial as to require of us neither mention nor discussion. We have concluded, however, that the case as presented by the testimony heard at the trial was not properly submitted to the jury by the instructions; but, before considering those errors, it will be necessary to make a brief substantial statement of the facts.

It was appellant's first visit to Prestonsburg. He resided in Vanleer, Johnson county, and by trade was a miner of coal. The fatal day was on Saturday, and about 2 o'clock p. m. he quit work. He procured a shave at a barber shop, arrayed himself in holiday attire, and then went to the store of Alonzo Blair, who then had or later procured a pint of whiskey, some of the contents of which both Blair and appellant imbibed. Later in the afternoon, the two, and perhaps another, started out driving in appellant's automobile, and finally arrived in Prestonsburg near 8 o'clock p. m., and for some time thereafter they drove around over the town. They then started across the bridge spanning the Big Sandy river running through Prestonsburg, at the far end of which was the railroad track and the passenger depot. They ran their automobile across the platform of the depot and onto the railroad track, where it stopped, and which appellant says was produced by suddenly occurring defects in the running gear and brakes of his automobile, and which he was powerless to prevent. The police judge of Prestonsburg was at the depot at the time, and his attention was attracted to the escapade of the automobile, as well as to the persons in it. He approached the automobile, and, as he was doing so, some one from the inside threw a bottle from it onto the ground, and there was also thrown therefrom a pistol, which landed upon or near the railroad track. The police judge sent a messenger for the policemen, and the chief of police and the deceased, Horn, soon appeared; they having previously crossed the river but were not immediately at the depot when the occurrence before mentioned happened.

The chief of police, one Bill Griffith, arrested Blair and started away with him to the police station, and it is claimed, with some evidence to support it, the deceased arrested appellant, but the evidence as to that fact is confusing. In the meantime, however, the thrown away pistol, or one found in the automobile, was placed upon its front seat, and, just as Griffith started away with Blair, appellant picked up that pistol and started to run, with the deceased pursuing him. Griffith with his pistol fired three shots in the direction of appellant while he was fleeing, but he says that he fired them for the purpose of frightening appellant and with no intention of shooting him. Just as the deceased passed Griffith, he also fired a shot in the direction of the fleeing appellant, and later fired another one, but in the meantime the parties had

circled a bend in the road or street and no one saw what occurred thereafter. Within an exceedingly short time four other shots were fired about 3 hundred yards away and around the bend, the first one of which it was proven was fired by the deceased, while the three following ones with a smaller pistol were fired by appellant, and all of which seem to have struck the deceased, but only one wound was a fatal one and resulted in the death of the deceased a short time thereafter. Appellant, after the shooting, started down the railroad, and was later arrested some 2 or 3 miles from Prestonsburg while still walking on the track of the railroad.

He admitted at his trial that he shot at deceased, but claimed that the latter was, not only pursuing and shooting at him, but that he was also threatening to kill appellant unless he ceased running, and, to prevent the danger thus threatened to his life and limb, he fired the fatal shot. In other words, he seeks to justify the killing on the ground that it was necessary or reasonably appeared to him to be necessary to avert imminent danger to his life or limb from the acts, words, and conduct of the deceased.

The commonwealth insists, and the court so instructed the jury, that the evidence was sufficient to find that appellant was drunk, was running his car at an unlawful rate of speed, and unlawfully had in his possession intoxicating liquor, all in the presence of the deceased, and that, if the jury so believed, then the deceased had a right to arrest him without a warrant, and that if, "while the defendant was under arrest, or while Horn was endeavoring to arrest him, the defendant, for the purpose of breaking the arrest, or for the purpose of preventing its accomplishment, willfully and knowingly shot and killed said Horn with a pistol, knowing at the time that Horn was a police officer and the reason Horn was arresting or attempting to arrest him," then defendant was guilty of willful murder, and the jury should so find. In other words, under the facts as we have briefly outlined them, one of the theories of the court by that instruction was to treat this case as coming within the provisions of section 1148a-7 of our present Kentucky Statutes, which, inter alia, makes it a felony for one "by violence, force or threats to alarm, disturb or hinder or obstruct, or intimidate any officer of the commonwealth of Kentucky, in the matter of his official action or in the discharge of his duty." The other instructions in the case appear to follow out that idea.

We are clearly convinced that the facts of this case do not bring it within the quoted provision of the section of the statute referred to, a violation of which is made a felony by that section, and, when committed in the presence of the officer, authorizes him to arrest the offender without a warrant, and gives him the further right to use such force in making the arrest, or in preventing an escape after the arrest, as is reasonably necessary to apprehend or retain the offender, even to the taking of his life, and which we so held in the cases of Rawlings v. Spivey, 191 Ky. 401, 230 S. W. 529, Gipson v. Commonwealth, 215 Ky. 710, 286 S. W. 1069, Bentley v. Commonwealth, 216 Ky. 665, 288 S. W. 295, 296, Mullins v. Commonwealth, 219 Ky. 60, 292 S. W. 471, and other opinions to the same effect which it is unnecessary to insert. In order for one to be guilty of the felony denounced by the inserted excerpt from that section, it is necessary that the offender by violence, force, or threats should alarm, disturb, hinder, obstruct, or intimidate the arresting officer in the discharge of his duty. The appellant here exercised no violence or force, nor did he make any threats against the officer, at least in the latter's presence, nor did any of his proven acts hinder or obstruct the deceased officer. The only thing that appellant did (even if it should be conceded that he had previously been arrested by the deceased) was to run away from deceased, but without the employment of any of the acts denounced by the statute, unless it should be held, as is insisted by the commonwealth, that the mere act of physical flight was the employment of ''force'' within the contemplation of the statute, and that such force, if it should be so construed, either hindered, alarmed, obstructed, or intimated the officer in his official action or in the discharge of his duty.

In support of that contention, the only case cited is that of Maggard v. Commonwealth, 173 Ky. 97, 190 S. W. 666, 667. That case had under consideration the proper interpretation of section 1338 of our present Statutes saying, inter alia, ''if a person lawfully arrested upon a charge for a violation of the criminal or penal laws forcibly or by bribery effects his escape from the officer or guard, he shall be confined in jail not less than six nor more than twelve months.'' The indicted prisoner in that case (who was the appellant therein), after being lawfully arrested, and while in custody of the arresting officer, went into the residence of a citizen upon whose

premises the officer and the prisoner had stopped, without the objection or protest of the officer, and apparently with his permission, and did not return, but, while passing through the house, he notified some of its inmates to tell the officer that he (the prisoner) had gone to his home; and we held that, under such circumstances, the appellant therein was not guilty of *forcibly* effecting his escape within the meaning of the section (1338) under which he was indicted and tried. It is true that we inserted in that opinion this dictum: ''This (acts that would constitute force within the meaning of the statute) would include fleeing of the prisoner from the officer over the latter's protest and in defiance of his commands, although no physical force other than that which might be used while fleeing from the officer was exercised by the prisoner.''

While that expression may or may not be correct, in interpreting that section so as to carry out the purpose of the Legislature in enacting it, yet it was wholly improper (although employed for the court by the writer of this opinion), since no such facts were involved in that case, and, when we held therein that the proven acts and conduct of Maggard in making his escape in the manner that he did, did not constitute *force* within the purview of that statute, we then determined the only question presented in the case, and in the inserted excerpt from the opinion, to the effect that fleeing from the officer over his protest would constitute force within the purview of the statute, we went beyond what the record authorized and indulged in dictum, which does not have the guiding effect of a precedent in future cases. We do not mean by what we have said with reference to the opinion in the Maggard case to hold that the statement contained in the dictum was either correct or incorrect, but we do mean to hold that, whether the one way or the other, it should not be a precedent guide in directing us to a proper interpretation of the above excerpt from section 1148a-7, supra, of our Statutes.

It results, therefore, that the deceased officer in this case had no right to take the life of appellant while doing no more than fleeing from deceased, even if the latter had attempted to arrest him but was prevented from doing so by such flight, and all upon the ground that the appellant had committed a misdemeanor in the presence of the officer and for which the latter could arrest him without a warrant. But deceased as such officer had no

right to take appellant's life in attempting to do so, or in attempting to recapture him after an escape effected only by flight. The case would then be governed by the principles announced in the cases of Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284, 30 Ky. Law Rep. 290; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Eastridge v. Commonwealth, 195 Ky. 126, 241 S. W. 806; Clem v. Commonwealth, 198 Ky. 490, 248 S. W. 1036; and opinions supra, and others referred to therein. Appellant having used no such physical force towards or against the deceased officer as would justify the latter in shooting him, either in the exercise of his right of self-defense, or the right to overcome and stop the flight by appellant, the instructions given by the court to the jury should have only submitted the right of deceased to arrest appellant if he had committed any offense in the presence of deceased, for which there was testimony to support, and that deceased had the right, if defendant escaped by flight, or hindered his arrest by such means, to pursue him for the purpose of arresting or recapturing him, but that he had no right to shoot at or otherwise imperil the life or limb of appellant, and that, if he did so, the latter had the right to defend himself in the exercise of his ordinary right of self-defense, to be given by an independent and separate instruction.

There also should have been given a proper instruction on manslaughter, as well as murder, and the reasonable doubt instruction, which would be all the instructions that would be authorized under the facts as now presented by the record, and would therefore constitute the whole law of the case. The instructions as a whole given by the court went far afield from the indicated proper ones, and constituted prejudicial error entitling appellant to a reversal of the judgment.

Another complaint is that hired prosecuting counsel defined in his argument the word "force" as outlined in the above-inserted dictum from the Maggard opinion, and to which defendant's counsel objected, but the objection was overruled. In view of our interpretation of that term in this opinion, it is not likely that counsel will repeat that argument upon another trial, and for that reason we will not discuss the merits of this ground.

For the reasons stated, the judgment is reversed, with directions to grant the new trial, and for proceedings consistent with this opinion.