## Loveless v. Commonwealth.

(Decided November 13, 1931.)

W. H. W. REYNOLDS and KELLY J. FRANCIS for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Buster Loveless, was indicted, tried, and convicted in the Lincoln circuit court for committing one of the statutory offenses denounced in section 1148a-7 of our present Statutes, and was punished by confinement in the penitentiary for eight years. The particular offense charged, and for which defendant was convicted, was the one contained in that statute making it a felony to disturb, hinder, obstruct, or intimidate an officer while engaged in the discharge of his duties as such, by violence, force, or threats, and the facts proven by the witnesses for the commonwealth in this case were: That a night policeman of the city of Stanford had in his hands a warrant of arrest for defendant for having violated some provision of the Rash-Gullion Act (Acts 1922, c. 33) and defendant knew that the officer possessed the warrant. The latter took defendant in charge and was on his way to put him in prison until an investigation could be made or a trial had, and defendant assaulted the officer, knocked him down, took his pistol from him, severely wounded him, and made his escape. The jury so found under proper instructions from the court, and we think the verdict was abundantly sustained by the evidence.

However, on this appeal by defendant, after his motion for a new trial was overruled, his counsel chiefly rely upon the contention that the section of the statute is invalid because it was enacted in violation of section 51 of our Constitution, and being so, the offenses it attempts to denounce with the punishment prescribed is invalid and of no force, and after a searching investigation of that question we have concluded that the position is well taken. It, however, does not follow from that fact that defendant may not be prosecuted under the indict-

ment for the common-law offense of obstructing justice, the punishment for which is an unlimited fine and unlimited confinement in the county jail, or both, within the discretion of the jury trying the case. That there is such an offense at common law, for the commission of which the perpetrator may be prosecuted, reference is made to the text in 46 C. J. 874, sec. 17, and following ones on succeeding pages. Other recognized publications on criminal law are to the same effect and for which reason it is unnecessary to incumber the opinion with their recitation.

Before taking up the chief question that we have above stated, we deem it proper at this point to say that an additional argument for reversal is made by counsel against the competency and sufficiency of the proof to show that the person intimidated was an officer cannot be sustained. It is true that the proper method of proving that fact is by the records of the appointing authority and which were exhibited at this trial. Fairly construed, they show that the alleged officer whom defendant is accused of intimidating and obstructing in the discharge of his duties was a de jure one duly appointed as such and executed bond. The entries on the record are not as formal as could have been made, but they are not so defective as to render them ineffectual to prove the fact for which they were introduced. Having said as much, we will now proceed to a consideration and determination of the main question in the case.

The section supra of our Kentucky Statutes (1148a-7) is section 7 of chapter 100, page 519, of the Session Acts of 1920, the title of which says: "An Act to define and prohibit criminal syndicalism and sedition and to prohibit conduct, publications, assemblies and the use of property for the promotion of criminal syndicalism and sedition, prescribing the duties of peace officers and providing penalties." Statutes subsequently enacted repealed that portion of the title saying "prescribing the duties of peace officers and providing penalties," leaving the remaining portion as the entire title to the act. Section 1 of the statute (Ky. Stats., sec. 1148a-1) defines "criminal syndicalism," and its section 2 (Ky. St. 1148a-2) defines "sedition" within the contemplation of the act. The first one is in these words:

"'Criminal syndicalism' is hereby defined to be the act of committing, aiding or counseling crime,

physical violence, arson, destruction of property, intimidation, terrorism, or other unlawful acts or methods, as a means of accomplishing political ends, or as a means of bringing about political revolution.''

Section 2 is thus expressed:

'' 'Sedition' is defined to be the advocacy or suggestion by word, act, deed or writing of public disorder or resistance to the Government of the United States or of the Commonwealth of Kentucky or of the Constitution or laws of either of them, or of the change or modification of the Government of the United States or of the Commonwealth of Kentucky, or of the Constitution or laws of either of them, by force or violence or by means other than by lawful means provided by the Constitution and laws of the United States and of the Commonwealth of Kentucky for such purpose.''

Since ''syndicalism'' and ''sedition'' are the only offenses mentioned in the title to the act, and since its inserted sections define those terms, it necessarily follows that unless the offense for which defendant was indicted, tried, and convicted (and which is denounced by section 7 of the act) is embraced by either of those definitions, its enactment would be in clear violation of section 51 of our Constitution, saying, in part, ''No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title,'' etc. It will be observed that ''criminal syndicalism,'' as embraced in the act, consists in ''committing, aiding or counseling crime,'' etc., ''as a means of accomplishing political ends, or as a means of bringing about political revolution,'' and it is not even contended by learned counsel for the commonwealth that the acts proven against defendant could by any process of reasoning be brought within the section defining that crime, and which, as we have said, is one of the only two that are mentioned in the title.

''Sedition,'' as will be seen, is the doing of any of the enumerated acts expressed in section 2 of the statute in resistance to the government of the United States, or the commonwealth of Kentucky, or the laws of either of them; or with the view of bringing about a change or

modification of either of those governments or their Constitution and laws ''by force or violence or by means other than by lawful means provided by the Constitution and laws of the United States and of the Commonwealth of Kentucky.''

It is earnestly argued by learned counsel for the commonwealth that the proven conduct of defendant is embraced under the statutory definition of ''sedition'' as contained in the statute, and for which reasons the constitutional objection relied on is untenable; but with that argument we cannot agree. We would experience no difficulty in arriving at that conclusion if the question was one of first impression before this court; but, in the case of Gregory v. Commonwealth, 226 Ky. 617, 11 S. W. (2d) 432, 433, what we conclude was the precise question, was before this court, and we held that the unlawful obstruction and intimidation of an officer in the discharge of his duties as denounced in section 7 of the act was not embraced within the definition of ''sedition'' contained in its section 2, and inserted supra.

In so concluding we employed this language in the opinion:

''The crime of sedition is defined to be the advocacy or suggestion in the manner indicated of public disorder or resistance of the government of the United States or of this commonwealth, or of a change in the government by force or violence or means other than those lawfully provided for that purpose. The crime denounced by section 7 of the act and the one here involved is the interference by violence, force, intimidation, or threats with an officer in the discharge of his duties as such. To disturb, hinder, obstruct, or intimidate an officer in the discharge of his duties, without more, falls far short of the advocacy by word, act, deed, or writing of public disorder or resistance to the government of the commonwealth. Further, the Legislature did not intend the two offenses to be identical. If the offense . . . in question was meant to be included under the definition given to the crime of sedition as set out in the second section of the act, it would not have been necessary for the Legislature to have set it up again in section 7 of the act, nor would it have been necessary for the Legislature in

this section 7, after describing the offenses therein set out, to have provided specially for their punishment, if such offenses were meant to be included in the offense of sedition, since the punishment for this latter offense had already been prescribed. It is true that the punishment for both offenses is the same, but that is fortuitous."

The reasoning therein advanced and the conclusions then reached are to our minds both sound and conclusive and to which we still adhere. It is true that in that case the question of the constitutionality of section 7 of the act was not presented or referred to; nor was the inserted excerpt from that opinion made in response to the same contention that is made in this case; but because of an insufficient framing of the indictment so as to make its descriptive language fatally depart from the offense stated in its accusatory part, the question as to whether the described offense (which was the same as is involved in this case) was the same as or a degree of the accused one, was presented and which called for an authoritative judicial construction of the statute on the precise question now under consideration.

In opposition to such conclusion, learned and industrious counsel for the commonwealth refers to a number of cases from this court in which the legality of section 7 of the 1920 act was, as he contends, at least tacitly recognized, some of which are: Neal v. Commonwealth, 229 Ky. 832, 18 S. W. (2d) 314; Mullins v. Commonwealth, 219 Ky. 60, 292 S. W. 471; Bently v. Commonwealth, 216 Ky. 666, 288 S. W. 295; Miller and Gabbard v. Commonwealth, 215 Ky. 819, 287 S. W. 6; Gipson v. Commonwealth, 215 Ky. 710, 286 S. W. 1069. In those cases the question of the rights of arresting officers (as affected by the character of offense committed by the one sought to be arrested) was involved, and it was said that where an officer had arrested or had in custody one charged with a misdemeanor and he resisted the officer in such a manner as to bring himself within the felony charge denounced in section 7 of the statute, then the officer would become vested with certain rights in making the arrest or in reapprehending his prisoner, that he would not possess had such felonious acts not been committed in his presence. In that incidental manner only has this court given recognition to the validity of the involved section 7 of the 1920 act. But in neither of them

was the invalidity of that section (because its enactment was in violation of section 51 of the Constitution) in any manner presented or suggested by any one in any way connected with the case or its disposition. In this case, however, the question is squarely and succinctly presented, as well as learnedly discussed, and we are convinced that there is no escape from the conclusion that the Legislature, in enacting section 7 of the act under which defendant was indicted and convicted, transgressed the limitations on its power as contained in section 51 of our Constitution, and because of which the section (7) must be declared invalid.

However, as hereinbefore stated, the indictment is so drawn that it properly charges defendant with the common-law offense of obstructing justice, and for that reason the demurrer filed to it was properly overruled; but the court should not have given any instruction based on section 7 of the 1920 act, and should have submitted to the jury only the common-law offense of obstructing justice, and for which error the judgment is reversed, with directions to sustain the motion for a new trial and to set aside the judgment, and for proceedings consistent with this opinion.

The whole court sitting.