## Campbell v. Commonwealth.

(Decided May 31, 1932.)

J. W. CAMMACK for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The appellant appeals from a judgment of the Jessamine circuit court imposing a fine on him of $50, for the alleged offense of forcibly attempting to break up and to prevent the lawful holding of an election on November 3, 1931, at South Wilmore voting precinct No. 12, Jessamine county. It is charged in the indictment that he committed the offense

"by abusing, striking, grabbing, pushing and pulling the election officers, and otherwise threatening interference with and intimidating the election officers."

As grounds for reversal he argues that the indictment is demurrable, the evidence is insufficient; the court erred in overruling his motion for a peremptory instruction, and in failing to give the whole law of the case.

To dispose of his appeal, fairly and properly, it is only required of us to consider the question of the sufficiency of the evidence. The appellant, at the time it is alleged that he committed the offense, was 25 years of age, unmarried, a student at Asbury College, Wilmore, Ky., where he had been a student for six consecutive years. Before matriculating his home was at Dayton, Ohio. A general election was being held by duly appointed and regularly qualified election officers in the precinct in which the appellant at the time claimed his residence. He entered the voting room in company with three other young men, and called for a ballot, when one of the election officers questioned him "as to where he lived," and he informed the officer "that he lived in the dormitory." Thereupon "the officer denied him the right to vote." George Crutchfield, a challenger and inspector, was present, but he did not exercise his authority to challenge the right of the appellant to vote. On the officers refusing to permit him to vote, he called for the affidavit which section 4177a, Ky. Stats., requires to be furnished with the ballots to the election officers. It was the statutory duty of the officers of the election on disagreeing as to his qualifications to provide him with the affidavit and to permit him to make it before them. The appellant had the legal right to demand that he be permitted to exercise the privilege of a voter. It

is entirely unnecessary to determine the duties of the election officers under the circumstances.

The commonwealth introduced Beecher Rhorer, one of the election officers. He stated that he did not know the appellant, and did not remember seeing him. James Bruner, one of the judges of the election, testified that he observed the appellant "pulling back from the challenger, he didn't want to go out." The election officers requested the sheriff of the election "to clear the room, that the voting might go on." This witness stated that the appellant wanted to vote, and that he himself questioned him, asked where he lived, when he stated "in the dormitory," and that, when he told the appellant he could not vote, the appellant offered to make the affidavit. To be accurate, we give his language as follows:

"We finally decided they had no right to vote and I think Mr. Doyle asked the sheriff to get them out so as not to delay the other voters. I looked around and Mr. Crutchfield had hold of his arm and Mr. Campbell struck at him, and the sheriff and Mr. Crutchfield shoved him out the door."

George Doyle, another election officer, stated that he did not know whether he saw Campbell present at the place. There was a little disorder; there were several in the voting room. Crutchfield testified that he was present when the judges decided Campbell did not have the right to vote. Campbell said he "was not going out until he had voted," when Doyle announced they were delaying the election and asked them to get out, and that thereupon Mr. Weed stated, "All right, you will remember this," but Mr. Caywood asked them to get out. Crutchfield further stated, "I went over to Campbell when Mr. Caywood announced, "Bring him to the door, they are delaying us," and Campbell reached and caught me by the collar and said he was not going out until he had voted, and announced he had the right to vote here and he was going to vote." This witness also stated that he announced to Campbell, "They have decided against you, get out. If I were you, I would go on out," when the appellant responded, "Not until I vote, I aint." Crutchfield further stated the election was stopped thirty minutes; that he shoved Campbell out after he hit him.

Tom Caywood, who was acting as sheriff of the election testified that he did not know Campbell and could not identify him; that there were four of them, and the judges decided they could not vote; that he saw one person get Crutchfield in the collar, and heard Campbell say that he was not going out; that he was entitled to vote. The election was held up fifteen minutes. No other evidence was heard or offered in behalf of the commonwealth.

The right of appellant to a peremptory instruction must be determined upon the evidence heard in behalf of the commonwealth, and, if it was insufficient to authorize a submission of the case to the jury, it was the duty of the court to give to the jury a peremptory instruction directing it to find the appellant not guilty, unless whatever evidence was lacking to authorize his conviction was supplied by the testimony of the appellant and his witnesses. Minniard v. Com., 214 Ky. 641, 283 S. W. 1001; Shepherd v. Com., 240 Ky. 261, 42 S. W. (2d) 311.

The testimony of appellant and his witnesses was a denial of any improper conduct on his part or any actions, conduct, or declarations on his part excepting those indicating his desire to vote, and to repel the attack made on him by Crutchfield.

A mere narration of the testimony of the commonwealth's witnesses is sufficient to show that the statutory offense for which appellant was indicted and convicted was not committed by him, though it may have constituted a breach of the peace which we do not determine. It is neither necessary nor proper to determine the right of appellant to cast his ballot, nor is it required of us to determine whether the election officers correctly or incorrectly, legally or illegally, refused to permit the appellant to vote or to make the affidavit required by section 1477a, Ky. Stats., except his and the officers' actions, conduct, and statements in this regard may be considered when determining the motive which actuated the appellant in his conduct on the occasion in question. It cannot be doubted that he had the right to be present and assert his right to vote, and to demand of the election officers a compliance with the statutes controlling their duty when a voter offers to vote. Whether the officers of the election were motivated by good or bad intentions to deprive appellant of his legal right to vote, or whether

they were right or wrong in refusing to permit him to vote, neither authorized the appellant to obstruct, resist, or oppose the holding of the election. The offense denounced by the statute may be committed with or without the employment of actual violence or direct force. Threats or acts of violence, or any conduct or demonstrations of a defendant, accompanied with the present intention and show of force, calculated to produce fear or terror in the minds of the election officers, to prevent the holding of an election, or to effectuate the breaking up its holding, or so to oppose, prevent or resist its holding, is an offense within the statutes, but the demanding of his legal right to vote in an orderly way, or remonstrating with the officers in an effort to vote, or the objecting to their method of performing their statutory duties, or the omission to perform them, or criticizing them while in the performance of such duties, does not amount to a violation of section 1588, Ky. Stats. U. S. v. Gordon, 25 Fed. Cas., page 1364, No. 15,231. To commit the offense of forcibly breaking up, or the preventing or attempting to break up or to prevent the legal holding of an election, or to obstruct or attempt to obstruct the same, as defined by section 1588, some element of force as indicated above must be both alleged and proven by the commonwealth. It is perfectly clear that the Legislature in enacting the section creating the offense intended to give some force and effect to the word "forcibly," for, if not, it would not have been made one of the essential elements of the offense. It is evident that the Legislature did not intend to punish the voter for persistently and earnestly demanding his right to exercise the privilege of voting. This is the sum total of appellant's conduct engaged in by him until the challenger and inspector began forcibly to eject him from the room. Such conduct may be regarded by some over-zealous persons as reprehensible, but it was not a violation of the statute under which the indictment was returned. Maggard v. Com., 173 Ky. 97, 190 S. W. 666. In determining whether a peremptory instruction should be given the question is, not whether the weight of the evidence indicates innocence, but whether there is any evidence of the offense charged in the indictment. When this rule is applied to the proven facts, it is plain that the appellant was entitled to a peremptory instruction. Epperson v. Com., 227 Ky. 404, 13 S. W. (2d) 247; Utterback v. Com., 190 Ky. 138, 226 S. W. 1065; Wells v. Com.,

195 Ky. 754, 243 S. W. 1032; Ball v. Com., 207 Ky. 189, 268 S. W. 1085.

Wherefore the judgment is reversed for proceedings consistent with this opinion.