## Steppe v. Commonwealth.

(Decided May 24, 1935.)

GOLDEN, LAY & GOLDEN for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

Henry C. Steppe was indicted by the grand jury of Harlan county, charging him with the willful murder of Homer Dotson, and, upon trial therefor by the Bell circuit court, he was convicted of voluntary manslaughter and his punishment fixed at confinement in the state reformatory for a period of fifteen years.

Complaining of this judgment, he appeals, seeking its reversal upon the grounds:

(1) That by the improper conduct of the county attorney and the commonwealth attorney, reversible errors were committed upon the trial.

(2) That the court made erroneous rulings and remarks during the trial which were prejudicial to the defendant.

(3) That the verdict is flagrantly against the evidence.

(4) That the court erred in instructing the jury and in failing to give the whole law of the case.

(5) That the Bell circuit court was without jurisdiction to try the case.

In view of the conclusions we have reached, that the judgment herein will have to be reversed for errors committed, as hereinafter discussed, in the matter of the instructions given, we deem it unnecessary to enter into a detailed discussion and determination of objections 1 and 2, complaining of misconduct on the part of the commonwealth's attorney and county attorney, but

regard it as here sufficient to say that we concur in the criticism made of their conduct as reprehensible and reversibly prejudicial to the right of the defendant to receive a fair and impartial trial, and that the court should have more vigorously and effectively reprimanded counsel employing such unfair tactics during the trial and should also have more vigorously and effectively admonished the jury as to the incompetent evidence, remarks, and argument of counsel complained of. As to objection 2, we do not concur in the criticism made of the court, that it manifested in its remarks and rulings its leaning and sympathy with the cause of the prosecution, and thereby indicated its wish that a verdict be returned against the appellant. As to this, however, the counsel for appellant we think rightly qualifies his criticisms of the remarks and rulings of the court by saying that the same were not made with any improper bias or intent.

The next objection is that verdict was flagrantly against the evidence.

A consideration of this assignment of error calls for a brief analysis of the evidence. This shows that on the afternoon of May 1, 1934, the appellant, Henry Steppe, a deputy sheriff of Harlan county, arrested the deceased Homer Dotson and his companion, Will Fields, for drunkenness as they passed his home in the outskirts of Evarts, Harlan county, Ky.

Having placed them under arrest, he had much difficulty in taking them to the jail some one-half or three-quarters of a mile distant, and deputized Emmett Hall, a neighbor, to assist him. It appears that the deceased, Homer Dotson, was turned over to Hall, while the appellant endeavored to hold up and carry Fields to the jail. Both Hall and the appellant testify that Dotson repeatedly turned back to the appellant and told him, "By God, I am going to make you turn me loose," and also stated that he was going to make him turn Fields loose and tried to take Steppe's pistol away from him as he was being taken to Evarts; also, that he drew from his pocket a bottle of whisky, which he attempted to drink, but was prevented by Steppe, who took it from him, telling him that he had already had enough.

Upon reaching the jail at Evarts, the evidence is that the jailer was absent and Hall was sent to find

him. It is testified that Dotson then started to go away, when he was called back by the appellant, and that he, as he returned, told Fields that he was going to knock him down and for Fields to run. Also, at this time, it is testified and so admitted by Fields, that he asked a man who happened to be then standing whittling by him to let him have his knife, which attracted the appellant's attention, who told the man not to let Fields have the knife. While his attention was thus drawn to Fields, it is claimed that Dotson rushed up and struck him a hard blow in the side of the face, which for a moment dazed and staggered him, when he drew his gun and with it began to "side-swipe" or strike at Dotson to knock him off, as he continued to scuffle and strike him; that during this scuffle, the pistol was twice discharged, the first shot going into the air and the second striking Dotson behind the ear and killing him.

Appellant says he does not know how his pistol was fired; that he did not mean to shoot Dotson; and that his firing was entirely accidental and unintended and occurred when he struck at and missed him, when in some way the pistol trigger must have been accidently pulled by him.

In this version of the shooting, the appellant is supported by the testimony of Hall and other of his witnesses. On the other hand, the testimony for the commonwealth is, while admitting that Dotson, when at the jail and while under arrest, had rushed up and assaulted or struck Steppe, the officer, and that during the scuffle the pistol was twice discharged, that Steppe shot the deceased after he had knocked him from him some three or four feet and when his back or side was turned to him; also that Dotson was at the time unarmed and known to be so by the appellant; that he was a small man, weighing about 150 pounds, while the appellant was larger and stronger, weighing about 200 pounds, and able to defend himself against Dotson's assault.

There was also evidence on behalf of the commonwealth that the appellant was himself drunk when making the arrest of Fields and Dotson, and that both the appellant and Fields were staggering as he brought him to the jail; also that he had just before borrowed 50 cents of Hall, for the purpose of buying whisky,

though it is not shown that it was by appellant either borrowed or used for such purpose.

Counsel for appellant insists that the physical evidence in the case clearly shows that Steppe did not, during the scuffle, hit Dotson in the head with his pistol in knocking him away, as contended, for the reason that no scars, which would necessarily have been inflicted by such a blow, were found upon him.

However, we are inclined to the view that the evidence being here conflicting, that of the commonwealth was yet ample to support the verdict and that the same should not be disturbed upon the ground that it is flagrantly against the evidence. Frost v. Commonwealth, 258 Ky. 709, 81 S. W. (2d) 583, decided April 16, 1935; Newsome v. Commonwealth, 240 Ky. 333, 42 S. W. (2d) 306.

Appellant's next objection is that the court erred in its instructions given the jury.

He criticizes the court's self-defense instruction No. 4 as erroneous, upon the ground that it limited defendant's right of self-defense only against Dotson, whereas he contends the evidence showed that Dotson and Fields were acting in concert and for such reason it should have instructed that he had the right to defend himself against both Fields and the defendant and against the apparent danger to him at the hands of either or both of these parties. He contends that such concert of action is shown by the evidence to the effect that Dotson had said to Fields that, "I will knock him down, God damn him, and you get up and run," and that Fields had immediately tried to borrow a knife; that Dotson had proceeded to strike Steppe and knock him against the jail.

While there is some evidence as to both these matters, it is yet not shown that Fields at any time attempted to do anything constituting a threat or danger to the appellant from him, or that the situation was thus one calling for self-defense against Fields, who the evidence shows was very drunk and at the time entirely unresisting of his arrest and detention by the appellant.

While conceding the law as to the appellant's right

to an instruction in proper instance as stated by the court in Watkins v. Commonwealth, 123 Ky. 817, 97 S. W. 740, 742, 29 Ky. Law Rep. 1273, that the accused "was equally entitled to have the jury instructed as to the grounds upon which he could defend himself and his associates against such danger, real or apparent, as he had reasonable grounds to apprehend to himself or them at the hands of those acting with deceased," we do not here find, as shown by the evidence, that defendant had any reasonable grounds to apprehend real or apparent danger at the hands of Fields, either as acting in concert with the deceased Dotson or in anywise threatening him.

The next instruction given by the court is No. 5, instructing the jury that if they believe the appellant, Henry Steppe, was a deputy sheriff of Harlan county, it was then his right and duty to arrest Dotson and Fields without a warrant and if, after so arresting them, they either of them attempted by force or violence to effect his release or the release of the other from the officer's custody, he then committed a felony in the defendant's presence, which then authorized him and it became his duty to use such force as was necessary or apparent to him as necessary to prevent Homer Dotson from effecting his escape or the escape of Fields, even to the extent of shooting and wounding and killing the deceased, Homer Dotson.

This instruction is evidently based upon section 1148a-7, Kentucky Statutes. This act is entitled "criminal syndicalism and sedition." Said named section 7 (Acts 1920, c. 100 [Ky. Stats. 1148a-7]) provides, in part, that whoever shall by violence, force, or threats to alarm, disturb, or hinder or obstruct or intimidate any officer of the commonwealth in the matter of his official action or in the discharge of his duty shall be guilty of a felony, and shall be punished as therein provided. However, in the case of Gregory v. Commonwealth, 226 Ky. 617, 11 S. W. (2d) 432, it was held that this section 7 of the act was unlawful as being not germane to the title of the act. In the case of Loveless v. Commonwealth, 241 Ky. 82, 43 S. W. (2d) 348, this same question was again presented. The section was again held to be unconstitutional as being not germane to its title, and therefore in violation of section 51 of the Constitution. Also to like effect, see the later case

of Roberts v. Commonwealth, 241 Ky. 591, 44 S. W. (2d) 577, where the court said that the trial court did not there instruct on the common law of obstructing justice, but only on the offense embraced in section 1148a-7 of the Statutes, held invalid, and that the judgment for such reason would have to be reversed.

So here, we regard the criticised instruction as defective for like reason, and the court is directed, on a retrial of this case, to give in lieu thereof an instruction in substance the same as that directed in the case of Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284, 287, 30 Ky. Law Rep. 290, which is as follows:

"The court instructs the jury that, if they believe from the evidence deceased was drunk and disorderly in the presence of appellant, the latter, as * * * had the right to arrest him without a warrant, and to hold him in custody until the presence of the police judge could be secured to make some disposition of the case, and, if they further believe from the evidence that, after the arrest of deceased, and while appellant had him in custody, deceased attempted by force or violence to effect his release from appellant's custody as an officer, appellant had the right to use such force as was necessary or reasonably appeared to him to be necessary, but not more, to overcome the forcible resistance of deceased, and if, under these circumstances, he shot and killed deceased, the killing was excusable, if appellant could not otherwise overcome the forcible resistance of deceased, or it reasonably appeared to him that he could not do so."

Instruction No. 6 upon accidental shooting is criticised by appellant as being so confusing and defective in its terms and qualifications as to practically deny the defense of accident. We find this instruction is fairly subject to the criticism made, and for such reason suggest that upon a retrial the court will substitute the instruction given upon accidental killing as set out in section 754, Hobson's Instruction to Juries. See Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Hawkins v. Commonwealth, 142 Ky. 188, 133 S. W. 1151.

Next turning our attention to appellant's final objection, that the Bell circuit court was without jurisdic-

tion to try the case, we deem it sufficient answer that as such objection is first here presented, when no objection was made to the court's jurisdiction by the defendant at the time of, during, or subsequent to his trial therein, it is untenable. In such case, as was said in McHargue v. Commonwealth, 23 S. W. 349, 15 Ky. Law Rep. 323:

"The reasonable presumption is that all the steps required by statute in order for appellant to obtain a change of venue were taken, and that, when the trial took place, the original papers, together with a transcript of the record, pertaining to the prosecution, had been transmitted by the clerk of Whitley circuit court, as was his duty, to clerk of Knox circuit court, and were before the latter court as indisputable evidence of the change of venue. * * *"

Therefore, in the absence of such objections having been timely made, and of a showing that the orders for change of venue were not properly made, we must conclude that all the steps required by statute to effect a change of venue were taken.

Therefore, it follows, for the reason hereinabove stated, that the judgment must be reversed, and the case is remanded, with instructions for a new trial consistent with this opinion.