## Clem v. Commonwealth.

(Decided March 23, 1923.)

### Appeal from Harlan Circuit Court.

1. Criminal Law—Testimony as to Conduct and Statements of Defendant Immediately After Shooting Held Competent.—Where defendant, an officer, claimed he did not intend to shoot deceased, an escaping prisoner, but was confused by assault, testimony that immediately after shooting he was staggering like an addled man and began crying and said he would not have done it for anything in the world was admissible in his favor as res gestae.

2. Homicide—Evidence of Bullet Hole, if Supporting Theory that Defendant Intended to Fire Over Deceased's Head, was Competent.—Where defendant, an officer, claimed he intended to shoot over the head of deceased, an escaping prisoner, to frighten him, evidence as to bullet hole in the barn, if at any great distance above deceased's head, was admissible.

3. Homicide—"Involuntary Manslaughter" Defined.—"Involuntary manslaughter" is the killing of another in doing some unlawful act, but without intention to kill.

4. Homicide—Instruction on Manslaughter Held Warranted.—Where there was evidence that defendant, an officer, did not intend to shoot an escaping prisoner, but the jury might have found that he did not exercise reasonable care in handling his weapon, an instruction on involuntary maslaughter was proper.

5. Homicide—Proper Instruction on Involuntary Manslaughter in Shooting to Frighten Escaping Prisoner Stated.—Where defendant, an officer, claimed to have shot to frighten an escaping prisoner, held, that instructions should have been given that, if he was not reckless, but, knowing the danger, failed to exercise reasonable care, he might be found guilty of involuntary manslaughter.

6. Homicide—Instruction as to Shooting Escaping Prisoner, Though Abstractly Correct, Held Liable to be Misunderstood.—Instruction that officer had no right to shoot or shoot at a prisoner escaping from custody on misdemeanor charge, though abstractly correct, held liable to be misunderstood or misconstrued in connection with definitions of duties of officer and prisoner and better used as preface to another instruction.

J. S. FORESTER, H. M. BROCK, W. A. BROCK, D. Y. LYTTLE and G. D. RADER, for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant was indicted in the Harlan circuit court charged with murder, and upon his trial was found guilty and sentenced to confinement in the penitentiary for life. His application for a new trial was denied, and he has appealed.

He and E. P. Howard were deputy sheriffs of Harlan county, and on the day of the homicide a justice of the peace had issued a search warrant authorizing the search of the house and premises of one John Middleton and the same was placed in the hands of one of these officers. The two officers went together to the home of Middleton and while the deputy Howard was reading the warrant Chester Howard, the deceased, a young man from an adjoining county who happened to be at the home of Middleton, interfered and said with an oath, "We do not aim to be searched," and drew his pistol and presented it at appellant. About the same time another young man, Charlie Brock, who had accompanied Chester Howard from their home in the adjoining county, also saw proper to announce that if there was going to be any shooting he would be the man to do it. Thereafter the two young men were arrested and while they were in custody by a ruse effected their escape from the officers; but later that afternoon Chester Howard was met by the officers and again placed under arrest, and that time the deputy E. P. Howard placed handcuffs on him. The justice of the peace who had issued the original search warrant was present or nearby, and they all took the prisoner and went to the house of the justice of the peace to procure the issuance of a warrant. The justice and the deputy Howard went into the house for the pur-

pose of preparing the warrant and left appellant and Chester Howard on the front porch. Young Howard was sitting in a chair handcuffed and leaning against the house, while appellant was sitting on the railing of the porch. Suddenly and without warning, the prisoner jumped from his chair and struck the officer one or more times rapidly in the face or on his head with his two hands and the handcuffs; the officer was nonplused temporarily, and appears to have lost his balance and grabbed at a post of the porch with one of his hands or arms, but whether he actually fell backwards off the porch is not clear. As soon as Chester Howard had done this he started to run, and appellant after regaining his balance pulled his pistol and shot in the direction of Chester Howard twice; the first shot missed him, going over his head, as said by some witnesses, but the second shot struck him in the back of the head, from which he shortly died.

The defendant's defense was that the shooting was accidental. He testified that he intended both shots to be fired over the head of the boy with the idea that it might frighten him and cause him to stop, and that he had no intention whatever of shooting him or injuring him; that at the time he fired the shots he had not recovered from the effect of the blows just received from the boy with the handcuffs on, and he was at the time addled or confused.

Immediately upon the firing of the two shots, which were in rapid succession, the other deputy sheriff, Howard, came out of the house. He testified that appellant at that time was staggering like an addled man, and that he began crying and said he "would not have done it for anything in the world." This latter statement the court admonished the jury not to consider and sustained an objection to it, and that is one of the questions of evidence involved. The justice of the peace and the deputy Howard were only a few feet away from appellant and Chester Howard when these things occurred on the front porch, and when the shots were fired it took them only a very short time to get to the door and see the situation of the parties. Under these circumstances it is perfectly clear that not only the acts and conduct of appellant right at that time were competent as a part of the res gestae, but that any statement then made by him consistent with his conduct at that time, was likewise competent. Men do not, under stress of great excite-

ment in such conditions, frame up evidence for their future purposes, and for this reason such things are competent either for or against one charged with crime. Such occurrences are a part of the thing itself, and are so intimately and closely connected in time with it as not be severable from it. We find no difficulty in holding that this evidence was competent and the court erred in excluding it. 34 Cyc. 1642.

The defendant on the trial also offered to show by the justice of the peace at whose home the shooting occurred that his barn was in the range of the pistol shots fired by appellant, as he understood the situation of the parties at the time, and that there was a certain bullet hole at a certain place on his barn, and was proceeding to state and explain where that bullet hole was when, upon motion of the Commonwealth, the court excluded all the evidence about the barn or the bullet hole in it. The defendant made no avowal about what he expected to show with reference to the location of this bullet hole, but we infer the purpose of it was to show that the first shot was fired at such an angle above the head of the fleeing boy as to strike at a particular place in the barn. If that was the purpose of the evidence, clearly it was competent as bearing upon the defendant's claim that he purposely shot above the head of the fleeing boy, and should have been admitted as bearing upon the purpose of defendant as claimed by him not to shoot or injure the boy. It is easy to understand how that bullet hole if located at such a place as to indicate it was any great distance above the head of the boy, might shed light upon the purpose of the man firing the shot.

Upon another trial this evidence if, when developed, it is material, will be admitted.

There are several complaints of the instructions given and refused, but we find no particular merit in any of the objections except two. The first is the failure of the court to give an instruction on involuntary manslaughter. Involuntary manslaughter has been defined to be the killing of another in doing some unlawful act, but without intention to kill. Conner v. Commonwealth, 13 Bush 714. In this case, unmistakably, the evidence authorizes the giving of such an instruction. The defendant testified that he had no purpose whatever to shoot and kill Chester Howard and there was other evidence tending to corroborate this. The jury might well

have believed that while he had no actual malicious purpose to shoot Howard, he did not exercise reasonable care in the handling of his weapon and would therefore have been guilty of involuntary manslaughter.

The case of Lewis v. Commonwealth, 140 Ky. 652, is, in its essential features, strikingly similar to this case, and the court there directed an instruction in effect that if the officer was not reckless in the handling of his weapon, but knowing and having reason to know the danger to the prisoner, failed to exercise reasonable care in handling or shooting his weapon, and as a result thereof shot the prisoner, the jury might find him guilty of involuntary manslaughter. A similar instruction should have been given in this case.

The court in the first instruction in this case first defined the duties of peace officers and their right to arrest persons and take them before a judicial officer, and then defined the duty of the person under arrest to submit and continue in custody, and set forth the duty of the officer and the force that he might use to retain such custody, and after accurately setting out these things he wound up that instruction with this language, to-wit:

"But such officer has no right to shoot at or shoot and wound a prisoner who is in flight from custody on a misdemeanor charge."

That is a correct abstract statement of the law, but it might easily have been misunderstood or misconstrued by the jury, used as it was in connection with the definitions of the duties of an officer and of a prisoner.

We think it would have been much better for the court to have used that, or similar language, as a preface to instruction number four so as that the last named instruction might have started thus:

You are instructed that an officer has no right to shoot at or shoot and wound a prisoner who is in flight from custody on a misdemeanor charge; but, nevertheless, if you shall believe from the evidence that the shot which killed Chester Howard, and so forth, then you will find the defendant not guilty.

Because of the errors indicated the judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent herewith.