## Clark v. Commonwealth.

(Decided January 18, 1929.)

DUNCAN & BELL, R. L. POPE and H. M. CLINE for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

The appellant was convicted of voluntary manslaughter, and sentenced to the penitentiary for 21 years. He is, as he is called by his counsel in their brief, a "merchant farmer," residing in McCreary county. For the crop year of 1926 he rented to one Gale Taylor, father of the deceased, a field near his residence, on which Gale Taylor had planted and raised a crop of corn that year. On Thanksgiving Day, 1926, Gale Taylor, with his son, the deceased, Cain Taylor, his father-in-law, Richard Taylor, and brother-in-law, George Hughes, went to this field to gather the corn, and had begun the work of gathering corn when appellant came to them and called Gale Taylor aside and engaged him in conversation, the substance of which, according to the proof, is that appellant said to Gale Taylor, he could not gather the corn until he had paid to appellant the amount he owed for supplies furnished him during the time the crop was growing. At the conclusion of this conversation, appellant turned and walked from the field. Gale Taylor then said to those with him that they would not then gather the corn, and they, too, left the field following appellant. When they reached the gate which led from the field to the highway,

and which was near appellant's residence, and adjacent to a frame garage belonging to him, Gale Taylor said to appellant that, if he would give him credit for some fodder which he had sold appellant, and would give him credit for the sum of $25, which appellant had promised him in event he would locate one Worman who had been indicted for some offense in McCreary county, and was out on bond signed by appellant, he would not owe appellant anything. Thereupon an argument arose between appellant and Gale Taylor as to the terms of the proposition concerning Worman—appellant insisting that he promised the $25 in the event Gale Taylor located and caused the arrest of Worman, and Taylor insisting that he was only to locate Worman and inform appellant where he could be found. At this point of the argument Gale Taylor says appellant called him a damn liar, and "run his hand down in his front pocket and pulled his gun up where I could see it and he pulled his gun out right there and I pulled my gun out as he pulled his gun out, and George Hughes got my gun, grabbed it and twisted it down that way (indicating) and said 'Don't do that,' and then George turned my gun loose and Walter went out of my sight and my boy got me and turned me right from where Walter Clark went''; while appellant says that Gale Taylor called him a liar first, and then he told Taylor he was a liar—whereupon he says Taylor pulled out his pistol and George Hughes grabbed it, and he (appellant) then ran into the garage.

The testimony further shows that, when Gale Taylor loosed himself from George Hughes, the deceased, Cain Taylor, grabbed Gale Taylor, or grabbed his pistol, and during their struggle appellant fired three shots from the garage, shooting Cain Taylor just back of his right shoulder and in the back of his right arm, and shooting Gale Taylor on the back side of his right shoulder. The garage was a frame structure, built of rough oak lumber with cracks between the boards; and the shots fired by appellant were fired through a crack between two boards.

Appellant further testified that, when George Hughes grabbed Gale Taylor or grabbed Taylor's pistol, Taylor said: "Turn me loose or I will shoot you, I am going to kill the God damn son of a bitch''—whereupon he says he ran into his garage, and he then saw Gale Taylor get loose from George Hughes, and that Gale was holding his pistol up and coming towards the garage

when he fired the shots that killed Cain Taylor; that he did not shoot at Cain Taylor; had no desire or intention to shoot him; and that the shooting of Cain Taylor was an accident; and further testified that, at the time he fired, he did not see Cain Taylor at all, although he says that deceased and Gale Taylor were only about 20 feet from him at the time he fired. On the other hand, the testimony for the commonwealth shows that Cain Taylor was holding Gale Taylor at the time the shots were fired, and that each of them had their backs to the garage; and George Clark, a brother of appellant, says that he was in the garage at the time appellant ran in, and that Cain Taylor had hold of Gale Taylor at the time the shots were fired.

Appellant relies upon three grounds for reversal: (1) That the verdict is excessive; (2) that, since the deceased was accidentally shot, the court should have given an instruction on accidental shooting, and an instruction on involuntary manslaughter; and (3) that instructions Nos. 4 and 5 given by the court are erroneous.

There is no merit in the first contention—that the verdict is excessive. Appellant was convicted of voluntary manslaughter, the punishment for which is confinement in the penitentiary for not less than 2 years nor more than 21 years. It is altogether within the province of the jury as to the punishment to be inflicted upon one charged with crime under the testimony and the law governing the case. Their verdict is conclusive, unless so palpably against the evidence as to induce the belief that it was given under passion or prejudice. McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630; Stephens v. Commonwealth, 226 Ky. 437, 11 S. W. (2d) 111. The second ground for reversal is equally without merit. The facts in this case are not such as to authorize the giving of an instruction on accidental shooting. The appellant admits that, at the time he shot Cain Taylor, he shot at, and intended to shoot, Gale Taylor. The shot fired was not an accidental shot, but was fired purposely and with the intent to shoot Gale Taylor. In the case of Adkins v. Commonwealth, 197 Ky. 385, 391, 247 S. W. 26, 29, it is said:

> "He does not claim that he shot accidentally or that there was an error in his marksmanship, but contends that he was shooting at Bob Blevins in an effort to save his own life. Under such circumstances

his justification or culpability in shooting Jerry Bowling is measured by the same rule as it would have been if he had shot Bob instead of Jerry and was on trial for shooting Bob.''

To entitle one to an instruction on accidental shooting, the shot fired must have been accidental—not an intentional shot. Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Brown v. Commonwealth, 122 Ky. 626, 92 S. W. 542, 28 Ky. Law Rep. 1335; Ewing v. Commonwealth, 129 Ky. 237, 111 S. W. 352, 33 Ky. Law Rep. 749.

Nor, was appellant entitled to an instruction on involuntary manslaughter. In Commonwealth v. Owen, 198 Ky. 655, 249 S. W. 792, it is said:

"We have defined 'involuntary manslaughter' as the killing of one by another, in doing some unlawful act not amounting to a felony nor likely to endanger human life and without intention to kill; and manslaughter may result when one kills another while doing a lawful act in an unlawful manner. Commonwealth v. I. C. R. R. Co., 152 Ky. 320 (153 S. W. 459, 45 L. R. A. [N. S.] 344, Ann. Cas. 1915B, 617); Maulding v. Commonwealth, 172 Ky. 371 (189 S. W. 251); Commonwealth v. Couch, 106 S. W. 830, (32 Ky. Law Rep. 638, 16 L. R. A. [N. S.] 327); Westrup v. Commonwealth, 123 Ky. 95 (93 S. W. 646, 29 Ky. Law Rep. 519, 6 L. R. A. [N. S.] 685, 124 Am. St. Rep. 316)."

Since appellant admits his intention to shoot Gale Taylor at the time and with the shots which wounded and killed Cain Taylor, it is clear that the killing of Cain was not the result of "some unlawful act not amounting to a felony nor likely to endanger human life." He was not, therefore, entitled to an instruction on involuntary manslaughter. Terrell v. Commonwealth, 194 Ky. 608, 240 S. W. 81.

The complaint as to instructions 4 and 5 is (a) that, since no motive underlies the killing of Cain Taylor, it was error to instruct on self-defense as to Cain Taylor; (b) that the self-defense instruction should be set out clearly without any limitation or modification, and should have given appellant the right to shoot and kill, if necessary, both Gale Taylor and Cain Taylor, not merely either of them; and (c) that it was error to use the word

!"affray" in the manslaughter instruction or to define it in the fifth instruction. These contentions as to the instructions present an anomalous situation—in that it is first insisted the court erred in instructing the jury on self-defense as to Cain Taylor, and in the next breath insisting that the court also erred in not giving the right of self-defense against both Gale Taylor and Cain Taylor. There is not a word or line of proof in this record to authorize an instruction on self-defense as against Cain Taylor. The evidence of appellant himself is that there was never any hard feeling of any sort between Cain Taylor and himself; that, at the time of the killing, there was not a word said between him and Cain Taylor, and that at the time he shot he did not see Cain Taylor holding or struggling with Gale Taylor, and that he did not see Cain Taylor at all, that he had no desire or intent to shoot Cain Taylor. The purpose of instructions is to enable the jury to apply the law to the facts adduced on the trial. A self-defense instruction should never be given when there is no evidence to authorize it. Instruction No. 4—the self-defense instruction criticized by appellant—was more favorable to appellant than the testimony authorized, and was not therefore prejudicial to him.

In instruction No. 2—the voluntary manslaughter instruction—the court said to the jury that, if they believed from the evidence beyond a reasonable doubt that the defendant in McCreary county, and before the finding of the indictment, willfully, feloniously, and in sudden heat and passion, or in sudden affray, killed the deceased, they should find him guilty of voluntary manslaughter; and in instruction No. 5 defined "sudden affray." Instruction No. 2 is the standard form of manslaughter instruction in this jurisdiction, and the action of the court in defining "sudden affray" was not prejudicial.

Perceiving no error the judgment is affirmed.