## Hill v. Commonwealth.

(Decided June 16, 1931.)

C. A. NOBLE, J. T. BOWLING and CLARK PRATT for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

B. E. Hill appeals from a judgment convicting him of willful murder, and fixing his punishment at life imprisonment.

The facts are these: Appellant was chief of the fire department of the city of Hazard, and, when not so engaged, acted as traffic policeman. On the occasion of the homicide he was acting as traffic officer at Walkertown, a suburb of the city of Hazard. At that point there were no sidewalks, and there was a large amount of traffic on the street, particularly on Saturday evening. About dusk on Saturday evening, September 6, 1930, appellant, who was standing on the edge of the highway, saw a car approaching. The car was driven by Artie Engle. W. K. Brewer sat on her right. The rear seat was occupied by Cinda Brewer, mother of W. K. Brewer, and by her daughter, Fay Maggard and her granddaughter, Norma Lee Maggard, an infant of tender years. Appellant had boarded at the home of Cinda Brewer, knew her and the other occupants of the car, and was on friendly relations with all of them. As to what occurred when the car drew near to appellant there is but little contrariety in the evidence. According to the occupants of the car, who testified for the commonwealth, appellant stepped into the highway and waved for the car to stop. The car was traveling between 20 and 30 miles an hour. Artie Engle thought appellant was joking and drove on. Just as the car passed appellant he said, "Stop that car." He let his hand come back on his gun and fired at the car. The bullet passed through the car and entered the body of the infant, Norma Lee Maggard, who died a few minutes later. Appellant stated to the occupants of the car that he did not know them and that it was an accident. The car did not swerve toward appellant. According to appellant the car was speeding. He went into the center of the road and flagged the car, first with

one hand and then with both hands. The car cut over on the right-hand side of the road where he was standing, and he jumped over on the dirt off the pavement. He did this because he was afraid he was going to get run over. The car drove right over the spot where he was standing. As the car passed he "hollered" "Stop that car," and jerked his pistol and fired from his hip. He fired to hit the tire so they would stop. He did not deliberately aim at the car, nor did he shoot at Kaiser Brewer or anybody else in the car. He did not jerk his pistol out and point it right at the car, but the car was several feet away when he fired. After he fired the car stopped and he learned that the baby had been shot. He then assisted in looking after the baby. There was other evidence that the car was going from 30 to 35 miles an hour. The rate of speed prescribed by the traffic ordinance of the city of Hazard was 10 miles an hour in the closely built-up portion of the city, 15 miles per hour in the residential portion, and 20 miles an hour outside of the residence portion. For a violation of any of the provisions of the ordinance the fine was not less than $10 nor more than $16 for each offense.

The indictment charged, in substance, that appellant did unlawfully, willfully, maliciously, feloniously, and with malice aforethought, shoot at W. K. Brewer with intent to kill him, and did kill, slay, and murder Norma Lee Maggard, etc.

In addition to defining the terms "willfully," "feloniously," and "malice aforethought," the court instructed on willful murder and voluntary manslaughter based on sudden affray or sudden heat and passion. Instruction No. 3 submitted the question of reasonable doubt on the whole case and as to the degree of the offense. Instruction No. 3a bore on the right of appellant to shoot into the car if the occupants forcibly resisted arrest. Instruction No. 3b is as follows:

"If you shall believe from the evidence in this case that at the time the defendant fired the shot which took the life of the deceased, the defendant fired the shot at the tire of the car and did not intend to injure or take the life of any one, then you ought to find the defendant not guilty, unless you shall believe from the evidence in this case beyond a reasonable doubt that at the time the defendant fired the shot he did it in a reckless manner and without lawful excuse and without regard for

human life, and shot and killed Norma Lee Maggard, then the defendant is guilty of wilful murder as charged in the indictment and you ought to so find, and fix his punishment as defined in these instructions.''

The evidence does not show that appellant fired at W. K. Brewer, and shot and killed Norma Lee Maggard. The most that can be said is that he intentionally fired into the car knowing that it was occupied by human beings. It has long been the law that if one voluntarily and recklessly fires into a crowd and kills any person, he is guilty of murder though he had no intention to kill or injure any one. Golliher v. Commonwealth, 2 Duv. 163, 87 Am. Dec. 493; Brown v. Commonwealth, 17 S. W. 220, 13 Ky. Law Rep. 372. The reason for the rule is that such conduct establishes ''general malignity and recklessness of the lives and personal safety of others, which proceed from a heart void of just sense of social duty, and fatally bent on mischief. And whenever the fatal act is committed deliberately or without adequate provocation,'' the jury has a right to presume it was done with malice. The rule has been applied where one having reason to believe that it was occupied by persons intentionally discharged a firearm into a dwelling house and killed some one therein. Washington v. State, 60 Ala. 10, 31 Am. Rep. 28, 3 Am. Crim. Rep. 171; State v. Capps, 134 N. C. 622, 46 S. E. 730; Russell v. State, 38 Tex. Cr. R. 590, 44 S. W. 159. It has also been held that one who deliberately shoots into a railroad train, occupied by passengers, cannot avoid liability for the resulting homicide by disclaiming malice, but is guilty of murder. Banks v. State, 85 Tex. Cr. R. 165, 211 S. W. 217, 5 A. L. R. 600. As an automobile offers less protection than a railroad coach, there is every reason why the same rule should apply where one intentionally fires into an automobile, which he knows to be occupied by human beings, and kills some one therein.

Whether, in view of the absence of any evidence tending to show that appellant fired at W. K. Brewer and killed Norma Lee Maggard, there was a failure of proof authorizing a reversal, we need not inquire. As the judgment must be reversed on other grounds, the grand jury may return a new indictment conforming to the facts.

The latter part of instruction 3b is erroneous and prejudicial, in that the only alternative allowed the jury

in case they believed from the evidence beyond a reasonable doubt that defendant fired the shot in a reckless manner and without lawful excuse, and without regard for human life, was to find him guilty of murder. An examination of the authorities will show that in cases like this where the officer shot at the casing for the purpose of stopping the car, and killed some one, we have ruled that he was entitled to an instruction on voluntary manslaughter based on the theory that the killing resulted from the wanton, reckless, or grossly careless use of a deadly weapon, and also an instruction on involuntary manslaughter based on the theory of the careless firing of the pistol, without any purpose of killing or injuring any one, and at a time when the officer believed, and had reasonable grounds to believe, that there was no danger in firing the pistol as he did. Smiley v. Commonwealth, 235 Ky. 735, 32 S. W. (2d) 51. In view of the situation presented by the evidence in this case we are of the opinion that the failure of the court to instruct on voluntary manslaughter and involuntary manslaughter, as above indicated, was prejudicial error calling for a reversal of the judgment.

Also in view of another trial we deem it necessary to add the following:

(1) There was no affray, sudden or otherwise, and the mere fact that the occupants of the car drove on and over the place where appellant was standing, without heeding his warning, was not such provocation as was reasonably calculated to excite his passion beyond the power of control. In the circumstances no instruction on voluntary manslaughter, based on sudden affray or sudden heat and passion, should have been given. Peal v. Commonwealth, 235 Ky. 356, 31 S. W. (2d) 602; Garrison v. Commonwealth, 236 Ky. 706, 33 S. W. (2d) 698.

(2) No instruction on forcible resistance to arrest should have been given. To constitute forcible resistance the force must be directed against the officer, and force employed merely in moving on or getting away is not sufficient. Anderson v. Commonwealth, 232 Ky. 159, 22 S. W. (2d) 599; Maggard v. Commonwealth, 173 Ky. 97, 190 S. W. 666.

(3) That part of instruction 3b authorizing appellant's acquittal, if at the time he fired the shot he did not intend to injure or take the life of any one, should not have been given. Here the shooting was intentional, and in cases like this it is only where the shooting itself, and

not the result of the shot, is unintentional, that one may be acquitted on the ground of accident. Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Clark v. Commonwealth, 227 Ky. 418, 13 S. W. (2d) 250.

On the return of the case the court, in addition to defining the words "wilful," "wilfully," "feloniously," and "with malice aforethought," in instruction No. 1, will add the following to that instruction:

"The words 'grossly careless' as used in these instructions mean that the act was done under such circumstances as to strike one at first blush as reckless or wanton."

The court will then give the following instructions:

"(2) If you believe from the evidence in this case beyond a reasonable doubt that the defendant, B. E. Hill, in Perry county, Kentucky, and before the finding of the indictment herein, willfully, feloniously and with malice aforethought aimed and fired his pistol into the automobile referred to in the evidence at a time when he knew or had reason to believe that there were persons therein, and thereby shot and killed Norma Lee Maggard, you will find him guilty of murder and fix his punishment at death or confinement in the state penitentiary for life in your discretion according to the proof.

"(3) If you do not believe as set out in Instruction No. 2, but do believe from the evidence beyond a reasonable doubt that the automobile on the occasion referred to in the evidence was exceeding the Hazard speed limit of 20 miles an hour, and that the defendant, B. E. Hill, while acting as traffic policeman, shot at the casing for the purpose of stopping the car, and thereby shot and killed Norma Lee Maggard, in Perry county, Kentucky, and before the finding of the indictment herein, by the reckless or grossly careless handling or shooting of the pistol at a time when he knew or had reason to know, that the pistol was dangerous to life in the way he used it, although he did not intend to shoot said Norma Lee Maggard, you will find the defendant guilty of voluntary manslaughter and fix his punishment at confinement in the state penitentiary for a period of not less than two nor more than twenty-one years in your discretion, according to the proof.

"(4) If you do not believe as set out in Instruction No. 2 or Instruction No. 3, but do believe from the evidence beyond a reasonable doubt that, on the occasion referred to in the evidence, the automobile was exceeding the Hazard speed limit of 20 miles an hour, and that the defendant, while acting as traffic policeman, shot at the casing for the purpose of stopping the car, without any purpose of killing or injuring anyone in the car, and at a time when he had reasonable grounds to believe and did believe there was no danger in so firing the pistol, and that the killing of Norma Lee Maggard resulted from his careless firing of the pistol in Perry county, and within 12 months before the finding of the indictment herein, you will find the defendant guilty of involuntary manslaughter and fix his punishment at a fine in any sum in your discretion according to the proof, or confinement in the county jail for any length of time in your discretion according to the proof, or you may both so fine and imprison him in your discretion according to the proof.

"(5) The law presumes the defendant to be innocent until his guilt has been established by the evidence beyond a reasonable doubt, and if upon the whole case you have a reasonable doubt of the defendant's having been proved guilty you will find him not guilty; or if you shall believe from the evidence beyond a reasonable doubt that the defendant has been proved guilty, but entertain a reasonable doubt as to whether his crime be that of wilful murder as defined in Instruction No. 2, or voluntary manslaughter, as defined in Instruction No. 3, you will find him guilty of voluntary manslaughter, the lesser offense, and fix his punishment as provided in Instruction No. 3; or if you believe from the evidence beyond a reasonable doubt that the defendant has been proved guilty, but entertain a reasonable doubt as to whether his crime be that of voluntary manslaughter, as defined in Instruction No. 3, or involuntary manslaughter, as defined in Instruction No. 4, you will find him guilty of involuntary manslaughter, the lesser offense, and fix his punishment as provided in Instruction No. 4."

The conclusion of the court makes it unnecessary to determine whether the court erred in refusing a continu-

ance, or the attorney for the commonwealth indulged in improper argument.

We also refrain from determining whether the court abused a sound discretion in overruling the motion for a change of venue, as the state of public feeling may be altogether different at the time of another trial, and no change of venue may be desired.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.

Whole court sitting.

CHIEF JUSTICE THOMAS and JUDGE DIETZMAN dissenting.

DISSENTING OPINION BY CHIEF JUSTICE THOMAS.

I agree with the opinion in every respect except wherein it holds that it was the duty of the court under the facts of the case to give to the jury an instruction on *involuntary* manslaughter. The testimony, as pointed out in the opinion, shows that the shooting done by appellant was not accidental, since he purposely fired his pistol at the time he shot and killed the deceased; and, further, that at the time he did so he intended to hit some part of the automobile in which the deceased and others were riding, but that he did not intend for the load in his pistol to strike or hit the body of the automobile containing its passengers, nor to strike any of the latter. Under the involuntary instruction authorized to be given, and which is copied in the opinion, it is properly stated (if the instruction should be given at all) that if defendant fired his shot at the casing of the wheels of the automobile "without any purpose of killing or injuring anyone in the car," etc., and "when he had reasonable grounds to believe and did believe there was no danger in so firing the pistol, and that the killing of Norma Lee Maggard resulted from his careless firing of the pistol," etc., then the jury should find him guilty of involuntary manslaughter. That language necessarily involves the idea that if defendant, though purposely and intentionally firing at the wheels of the automobile, did not do so *carelessly* and under the belief that there was no danger in so doing, then he was guilty of no crime and was entitled to an acquittal.

"Involuntary manslaughter" is the killing of another in the doing of some unlawful act, but without

intention to kill him; or in the doing of a *lawful* act in an *unlawful* manner without like intention. Clem v. Commonwealth, 198 Ky. 486, 248 S. W. 1036; Commonwealth v. Owens, 198 Ky. 655, 249 S. W. 792; Maulding v. Commonwealth, 172 Ky. 371, 189 S. W. 251; and other cases cited in those opinions. Under that definition the involuntary manslaughter instruction directed to be given in this case is necessarily predicated, as is pointed out, upon the theory that it was lawful for appellant, and he had the legal right, to shoot at some part of the automobile occupied by the decedent and which it is my conclusion is untrue, unless its occupant, or occupants, were legally chargeable with committing a felony and defendant was lawfully preceeding to arrest him or them, and it was necessary to so shoot in order to effect the arrest.

No such latter contention is made in this case, and the most that is contended is that, perhaps, some one in the automobile was guilty of a *misdemeanor*. In that case it is my conviction that an officer has no right to engage in the extremely hazardous and dangerous act of shooting *at* a moving, and more or less wabbling, vehicle containing passengers or occupants. Such an act, as I conclude, is in and of itself so fraught with recklessness and gross carelessness as to render the killing, if oné occurs as a result thereof, *voluntary* manslaughter as a result of the doing of an unlawful act in a *grossly* reckless and careless manner, forming the degree of homicide embodied in instruction 3 which the opinion directs to be given and which I approve. It is bottomed upon the theory that the shooting itself was unlawful but with no intention to kill any one, which, with the further fact of gross carelessness, renders the perpetrator guilty of voluntary manslaughter and which I think is the lowest degree of homicide that defendant is entitled to under the facts of this case.

My conclusions are based upon the general principles governing the definition of *involuntary* manslaughter and would be entertained by me in the absence of any former expression of this court to the same effect. But, in the case of Terrell v. Commonwealth, 194 Ky. 608, 240 S. W. 81, 86, we had before us the *identical* question of the right of the defendant to insist on the giving of such an instruction, under practically identical facts, and we held that he was not entitled to it. The only difference between the facts of that case and those of this one is that the victim of the shooting therein was riding

a, mule instead of riding in an automobile, as was true in this case. Upon the point under consideration the opinion said: "The shooting, as testified to by defendant, was voluntary and intentional, and it was for the jury to determine whether the theory of defendant was true or whether he intended to shoot the deceased." We also pointed out in that opinion the distinction between the facts in that case, which were the same as those presented in this one (with only the immaterial difference referred to), and the case of Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517, relied on by the defendant therein. In the Lewis case wherein the giving of the involuntary manslaughter instruction was directed, there was evidence to show that the shooting was unintentional and accidental; but in the Terrell case, as in this one, the shooting was intentional and not. accidental; and being so it was unlawful, but which is untrue, according to the opinion, if it was not *carelessly* done. The principle announced in the Terrell opinion upon the point now under consideration was approved in the later case of Clark v. Commonwealth, 227 Ky. 418, 13 S. W. (2d) 250.

The holding of the opinion in this case is not only contrary to the principles of law measuring degrees of homicide, but its approval opens wide the door for the useless and needless destruction of the lives of those traveling in automobiles, or of wounding them, by officers of the law claiming the right to apprehend some one or more of their occupants for the supposed commission of some trifling offense, and which, I think, is so hazardous to the lives and safety of innocent travelers that it should not be approved and that there should be visited upon the perpetrator a punishment commensurate with such dangerous conduct.

For the reasons stated I most respectfully dissent to the extent indicated. Judge Dietzman concurring.