IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JUNE 1996 SESSION

FILED

August 18, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9512-CC-00389 |
| | ) | |
| | ) | Madison County |
| v. | ) | |
| | ) | Honorable Franklin Murchison, Judge |
| | ) | |
| GEORGE E. MARTIN, JR., | ) | (Possession with the intent to sell cocaine) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

George Morton Googe
District Public Defender
    and
Pamela J. Drewery
Assistant Public Defender
W. Baltimore Street
Jackson, TN 38301

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Robin L. Harris
Assistant Attorney General of Tennessee 227
450 James Robertson Parkway
Nashville, TN 37243-0493

Jerry Woodall
District Attorney General
        and
Nick Nicola
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, George E. Martin, Jr., appeals as of right from his conviction by a jury in the Circuit Court of Madison County for possession with the intent to sell cocaine, a Class B felony. The trial court sentenced the defendant as a Range I, standard offender to nine years to serve ninety days in the county jail and eight years and nine months on community corrections. The trial court also imposed a fine of two thousand dollars. On appeal, the defendant contends that:

> (1) the trial court erred by denying his motion to suppress;
>
> (2) the prosecutor engaged in improper argument by commenting on the absence of witnesses;
>
> (3) the trial court erred by allowing into evidence the cocaine seized by the officers because the state failed to establish the proper chain of custody of the evidence, by failing to take judicial notice of newspaper articles reporting the desecration of the Drug Task Force's evidence vault, and by not allowing the defendant more time to gather proof regarding the desecration; and
>
> (4) the trial court erred in sentencing the defendant because it failed to consider mitigating factors and improperly considered an enhancement factor.[1]

We hold that the trial court did not err. We affirm the defendant's judgment of conviction.

Officers Greg Robinson and Tim Willis of the Madison County Sheriff's Department were conducting a drug sweep at Merry Lane Courts. Initially, they observed the defendant walking towards them through a playground approximately

---

[1] Although the defendant does not present it in his statement of the issues, he begins the argument portion of his brief with a claim that the guilty verdict "is against the great weight and preponderance of the evidence," pointing to perceived weaknesses in the state's proof. This claim presents no cognizable issue. See State v. Matthews, 805 S.W.2d 776, 778-79 (Tenn. Crim. App. 1990). Appellate review of the sufficiency of the evidence does not allow us to reweigh the evidence or to consider how it might preponderate. Rather, we must afford the state the strongest legitimate view of the evidence contained in the record, including all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Then, it is only when the facts, so viewed, are insufficient as a matter of law for a rational trier of fact to find guilt beyond a reasonable doubt may we conclude that the evidence is insufficient. In this respect, our review of the evidence in this case leads us to the conclusion that the defendant was convicted upon sufficient evidence.

seventy-five yards away. When the defendant was within fifty yards of the officers, the defendant reached inside his pocket, removed something and dropped it on the ground. The defendant then turned to the right and began walking away from the officers. Officer Willis stopped the defendant and asked him for identification. Meanwhile, Officer Robinson returned to the playground area to search for the item dropped by the defendant. Officer Willis permitted the defendant to leave before Officer Robinson discovered a plastic bag containing a substance that appeared to be crack cocaine. The plastic bag contained fourteen rocks of a cocaine-based substance having a street value of about two hundred and fifty to two hundred and eighty dollars. The officers then arrested the defendant as he entered Kentucky Fried Chicken, finding three hundred and ten dollars in cash and a pager on the defendant.

## I. MOTION TO SUPPRESS

The defendant contends that the trial court should have granted his motion to suppress in that the police lacked probable cause for the warrantless stop of him. However, the defendant has failed to raise the issue in his motion for new trial. The failure to raise the issue in the motion for new trial constitutes a waiver of the issue on appeal. See T.R.A.P. 3(e) and 36(a). Also, the defendant has not included a transcript of the hearing on the motion to suppress in the record on appeal. It is the defendant's duty "to have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to the issues that are the bases of appeal." T.R.A.P. 24(b). When necessary parts of the record are not included on appeal, the court must presume that the trial court's ruling was correct. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Such is the case before us.

3

## II. PROSECUTOR ARGUMENT

Next, the defendant contends that the prosecutor committed prosecutorial misconduct during his closing argument by commenting on the absence of witnesses. He argues that the witnesses were not knowledgeable about material facts and could have testified only to collateral matters. He asserts that the comments were especially damaging because the defendant's credibility had been attacked.

During the trial, the defendant testified that he had borrowed his sister's car to visit his cousin, Yolanda Brown, at Merry Lane Courts. He said that he had left Brown's apartment to walk to Kentucky Fried Chicken to get something to eat at the time that he was arrested. He also stated that he was living with his mother at the time. Regarding the three hundred and ten dollars that he had with him at the time of his arrest, the defendant claimed that he had received approximately one hundred and fifty dollars from an income tax refund and that he had won the rest of the money gambling. The defendant also testified that he had the pager to keep in contact with his friends. He conceded that he had lied to the officers about the source of the money. On cross-examination, the defendant admitted that his mother, sister, cousin and his friends who contacted him through his pager were not there to testify.

In relevant part, the prosecutor's argument was as follows:

> Now, . . . the Judge is going to instruct you that you can weigh the credibility of witnesses and he is also going to instruct you that the burden of proof is upon the State. And that burden never shifts. However, the defendant here today, it's his cho[ic]e to present testimony and puts his own credi[]bility into issue that you can weigh.

> Now, imagine this if it were. If Investigator Robinson had testified we found crack cocaine, we saw the defendant drop it, and that was the only proof. We wouldn't bring Willis to say he had all the money, we didn't bring in the lab person to say this in fact was crack cocaine. You may very well say, you didn't carry your burden through. And, that would be fine. But, we brought in these people to show you each step that was taken. The defendant, on the other hand doesn't even bring in his own mother to say in fact that he did live in

4

Denmark, at some time. Doesn't bring in the people that he was supposed to be gambling with. Doesn't bring in all these people who needed to contact him, by use of his pager. Doesn't bring in his sister, who's car he said he borrowed and most of all, and most importantly, doesn't even bring in the cousin that he says he was there to visit. Now, would you allow the State to take steps like that?

MS. DREWERY: Your Honor. The burden's different for the State, than it is for the Defense.

THE COURT: Well, the burden is on the State. The Defendant doesn't have to prove anything. The state has to prove the case.

The prosecutor continued his argument by acknowledging that the state had the burden of proof in the case, but asserted that the jury was not required to accept the defendant's proof without question.

The prosecutor also stated that the defendant had offered no plausible explanation for being in a high crime area, arguing:

You have his word, but none of the corroborating. None of the people, who could supposedly back his word up. And, what's his word worth? Well, he's told you once, at least once, that he lied to the officers, while out there on the scene. He lied about where the money came from. Perhaps, he lied about what he was actually doing out there.

The prosecutor then argued that the defendant wanted the jury to believe that the officers had lied but that "he doesn't offer anything to back it up. He doesn't offer the supposed cousin, he was out there visiting."

The defendant refers to the comments made by the prosecutor as references to missing witnesses for the purpose of the jury inferring that the witnesses' testimony would have been unfavorable had they testified. "As a predicate for comment on a missing witness, the evidence must show that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for the trial." Delk v. State, 590 S.W.2d 435,

5

440 (Tenn. 1979). The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984).

The initial problem with the defendant's position, though, is that he did not object to the argument based upon the missing witness inference. Rather, he objected to the state's argument because it tended to shift the burden of proof to him. The trial court sustained this objection and gave a curative instruction, which was immediately followed by the state's acknowledgment that the defendant did not have any burden of proof. The defendant may not object on one ground and then assert a new or different theory to support the objection in the motion for new trial or on appeal. State v. Adkisson, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). Raising a new ground on appeal for objecting to the introduction of evidence results in a waiver of the issue on appeal. Id. at 635.

In any event, we do not believe that the prosecutor's argument was improper as claimed by the defendant. During cross-examination, the prosecutor asked the defendant, without objection, whether his mother, sister, cousin and friends who contacted him on his beeper were present to testify. The defendant stated that they were not present and admitted that they could have testified in his behalf. In this respect, the prosecutor's reference to the witnesses' absence was a permissible comment on the evidence.

Also, we see some defusion from the missing witness inference in that the prosecutor's comments actually focused upon the defendant's credibility and not directly upon what could be inferred from "missing witnesses" about their potential testimony. In this context, we do not believe that the prosecutor's argument was

6

improperly prejudicial to the defendant, and thus, it did not constitute prosecutorial misconduct.  See Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

## III.  INTRODUCTION OF COCAINE

The defendant asserts that the trial court erred by allowing evidence of cocaine over his objection regarding the adequacy of the chain of custody.  He argues that the trial court should have either taken judicial notice of newspaper articles[2] reporting the "desecration" of the Drug Task Force's evidence vault or given him more time to gather proof regarding the desecration.  We hold that the trial court did not err by permitting the introduction of the cocaine into evidence.

At trial, Officer Greg Robinson testified that he took the plastic bag that he retrieved from the ground near the playground, sealed it in the appropriate evidence envelopes with an evidence tag, and placed it in the evidence vault.  Officer Robinson identified the plastic bag and the evidence bag containing the case number, the charge, the defendant's name, and the seals with his initials on the tape.  He stated that he took the evidence bag from the vault and brought it to court.  He said that the bag was sealed and had one additional piece of tape on it which was added by the crime lab.

During the prosecutor's questioning of Officer Robinson regarding the chain of custody of the cocaine, a jury-out hearing was held at which defense counsel objected to the admission of the cocaine, stating that the Drug Task Force had experienced problems with its evidence room.  The prosecutor asserted that defense counsel was referring to articles contained in The Jackson Sun but stated that defense counsel had no proof of the problem.  The trial court overruled the defendant's objection, stating that the state must establish chain of custody.

---

[2] We note that the newspaper articles are not contained in the record.  It is the defendant's obligation to prepare an adequate record for appellate review.  T.R.A.P. 24.

Officer Willis testified that the evidence was placed inside the vault and that it was not removed until he took it to the crime lab for analysis. TBI Agent Lisa Mayes testified that she received a sealed, plastic bag of cocaine from Officer Willis. She said that after analyzing the substance, she placed the plastic bag back inside the evidence bag, sealed it, wrote the lab number and her initials on the bag, and then placed the evidence inside the evidence vault. At trial, she identified the evidence and confirmed that the lab number matched that of the evidence she analyzed.

At the motion for new trial, the defendant argued that the state had failed to establish the chain of custody of the cocaine. The defendant asserted that the trial court could take judicial notice that the Drug Task Force's vault was broken into based upon the newspaper articles, but the prosecutor objected to the introduction of the articles. Defense counsel then requested that more time be allowed to prove that the vault had been broken into, and the prosecutor responded, "We had a trial." The trial court did not directly rule on either request, but instead stated, "Go ahead." Defense counsel proceeded to her next issue contained in the motion for new trial. At the conclusion of the hearing, the trial court denied the defendant's motion for new trial.

**A.**

First, the defendant argues that the trial court erroneously allowed evidence of the cocaine because the state failed to show the proper chain of custody of the cocaine. The state responds that the record demonstrates that the testimony of the officers and Agent Mayes sufficiently established the chain of custody. We agree.

Before tangible evidence can be introduced, "a witness must be able to identify the evidence or establish an unbroken chain of custody." State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982); Bolen v. State, 544 S.W.2d 918, 920 (Tenn. Crim. App. 1976). The purpose underlying this requirement is "to demonstrate

that there has been no tampering, loss, substitution, or mistake with respect to the evidence." State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). However, the identity of such evidence need not be proven beyond all possibility of doubt, but rather the circumstances must establish a reasonable assurance of the identity of the evidence. Ritter v. State, 3 Tenn. Crim. App. 372, 462 S.W.2d 247, 250 (1970). Whether the requisite chain of custody has been sufficiently established to justify admission of evidence is a matter committed to the sound discretion of the trial court, and the trial court's determination will not be overturned in the absence of an abuse of that discretion. Goodman, 643 S.W.2d at 381; Wade v. State, 529 S.W.2d 739, 742 (Tenn. Crim. App. 1975).

The evidence in this case is sufficient to establish an unbroken chain of custody. The testimony of Officer Robinson, Officer Willis and Agent Mayes establishes a reasonable assurance that the substance discovered by Officer Robinson was the same substance which Agent Mayes tested and which was introduced at trial.

## B.

Next, the defendant asserts that the trial court should have taken judicial notice of newspaper articles reporting the desecration of the Drug Task Force's evidence vault. The state contends that the defendant did not request that the trial court take judicial notice at trial but instead waited until the motion for new trial. The state argues that the trial court could not take judicial notice of the articles absent a request by the defendant. We hold that the trial court did not err by failing to take judicial notice of the articles.

Judicial notice is governed by Rule 201, Tenn. R. Evid. A trial court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

9

capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(a) and (b). A request need not be made for the trial court to take judicial notice, and such notice may be taken at any stage of the proceedings. Tenn. R. Evid. 201(c) and (e).

Rule 201 does not permit a trial court to take judicial notice of hearsay statements contained in the newspaper articles. Information contained in a newspaper article is not "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Rather, the content of newspaper articles is hearsay that does not fall within an exception to the hearsay rule, and thus is inadmissible at trial. Tenn. R. Evid. 801, 802 and 803. Whether the vault had been tampered with was a matter that was subject to reasonable dispute, and therefore, the defendant was required to prove the fact. The defendant failed to do so in this case.

### C.

The defendant contends that the trial court should have given him more time to establish the desecration of the Drug Task Force's vault. However, the defendant did not make a request for additional time until the motion for new trial. Under these circumstances, the defendant is not entitled to relief. See T.R.A.P. 36(a). In any event, the defendant has failed to establish that the trial court abused its discretion in admitting the evidence. We hold that the trial court did not err.

### IV. SENTENCING

The defendant asserts that the trial court erred in sentencing the defendant by failing to consider mitigating factors and by relying on enhancement factors not provided by T.C.A. § 40-35-114. He argues that the trial court should have

imposed the minimum sentence with the lowest level of supervision. The state

contends that the trial court properly sentenced the defendant. We agree.

Appellate review of sentencing is <u>de novo</u> on the record with a

presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As

the Sentencing Commission Comments to this section notes, the burden is now on the

defendant to show that the sentence is improper. This means that if the trial court

followed the statutory sentencing procedure, made findings of fact that are adequately

supported in the record, and gave due consideration and proper weight to the factors

and principles that are relevant to sentencing under the 1989 Sentencing Act, we may

not disturb the sentence even if a different result were preferred. <u>State v. Fletcher</u>, 805

S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial

court's action is conditioned upon the affirmative showing in the record that the trial

court considered the sentencing principles and all relevant facts and circumstances."

<u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of

meaningful appellate review,

> the trial court must place on the record its reasons for arriving
> at the final sentencing decision, identify the mitigating and
> enhancement factors found, state the specific facts supporting
> each enhancement factor found, and articulate how the
> mitigating and enhancement factors have been evaluated and
> balanced in determining the sentence. T.C.A. § 40-35-210(f)
> (1990).

<u>State v. Jones</u>, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a <u>de novo</u> review, we must consider (1) the evidence, if

any, received at the trial and sentencing hearing, (2) the presentence report, (3) the

principles of sentencing and arguments as to sentencing alternatives, (4) the nature and

characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors,

11

(6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c).[3] Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

Before the sentencing hearing, the defendant filed a list of mitigating factors for the trial court to consider. The defendant requested that the trial court consider that:

> (1) the defendant's conduct neither caused nor threatened serious bodily injury;
>
> (2) the defendant did not contemplate that his criminal conduct would cause or threaten serious bodily injury;
>
> (3) the defendant, because of his youth, lacked substantial judgment in committing the offense; and
>
> (4) the defendant is attempting to enroll in college.

See T.C.A. § 40-35-113(1), (6) and (13).

At the sentencing hearing, the then nineteen-year-old defendant testified that he was not working but planned to attend technical school to study diesel mechanics and auto body repair in the fall. The defendant conceded that he had not

---

[3] For Class A felonies committed on or after July 1, 1995, the presumptive sentence is the midpoint of the range. See T.C.A. § 40-35-210(c) (Supp. 1996).

12

enrolled at school but asserted that he had talked to someone at the school regarding enrollment and financial aid. He asserted that he had not looked for a job because of his plans to go back to school. The defendant said that he was living in Nashville with a friend and claimed that his mother was giving him money to pay the bills. He admitted that he had been convicted of misdemeanor possession of marijuana approximately three to four months earlier.

The presentence report reflects that the defendant, a high school graduate, did not have any prior felony convictions. It shows that the defendant was arrested when he was sixteen years old for shoplifting and was ordered to participate in the street law program. Regarding his employment history, the report states that the only job held by the defendant was with the United Parcel Service over the Christmas holiday as a seasonal employee following his arrest for the present offense. The report also reflects that the defendant denied having any alcohol or drug abuse problems.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant to nine years, with ninety days to be served in the county jail and the remaining portion in community corrections. In sentencing the defendant, the trial court concluded that the only enhancement factor that applied was his previous history of criminal convictions or criminal behavior. See T.C.A. § 40-35-114(1). The trial court also considered in mitigation that the defendant was eighteen years old at the time he committed the offense. See T.C.A. § 40-35-113(6) ("The defendant, because of his youth . . ., lacked substantial judgment in committing the offense.").

The defendant argues that the trial court inappropriately considered the seriousness of the crime for enhancement purposes. We note that the enhancement factors set forth in T.C.A. § 40-35-114 have been determined to be the factors that may be applied to increase the length of a defendant's sentence. State v. Dykes, 803

13

S.W.2d 250, 258 (Tenn. Crim. App. 1990). We also note that although the seriousness of the offense is not a factor contained in T.C.A. § 40-35-114, the 1989 Sentencing Act requires the nature and characteristics of the criminal conduct to be considered for sentencing purposes. See T.C.A. § 40-35-210. In this sense, to the extent that the circumstances surrounding the criminal conduct relate to existing enhancement factors, those circumstances may have substantial bearing on the weight that the sentencing court places upon a particular factor. In any event, though, the record in the present case does not reflect that the trial court enhanced the defendant's sentence based upon the seriousness of the offense. Rather, although the trial court stated the offense was "very aggravating" and "terrible," it stated that those circumstances were addressed by the penalty involved for the offense being a Class B felony. Thus, the trial court did not inappropriately consider the circumstances of the crime for enhancement purposes.

The defendant also contends that the trial court failed to address the list of mitigating factors provided by the defendant before trial. We disagree. The record shows that the trial court considered but rejected the mitigating factors offered by the defendant. We agree with the trial court's decision.

Regarding the defendant's claim that he deserved the minimum sentence, we note that the trial court's decision regarding the weight to be afforded an existing factor is discretionary as long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169. We conclude that the record adequately supports the trial court's sentencing decision.

14

In consideration of the foregoing and the record as a whole, we affirm the defendant's judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
David H. Welles, Judge


_____
Jerry L. Smith, Judge